**Sammy Lee NELMS, Petitioner,**

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

Jan. 26, 1976.

Edward G. Thompson, Shelby County, Public Defender, Walker Gwinn, Asst. Public Defender, Memphis, for petitioner.

R. A. Ashley, Jr., Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, for respondent.

## OPINION

FONES, Chief Justice.

We granted certiorari in this cause to determine the sole question of whether the State's failure to bring petitioner to trial within one hundred eighty (180) days violates the Interstate Compact on Detainers, T.C.A. § 40–3901 et seq., and voids the indictment and conviction under the terms of that statute. The Court of Criminal Appeals, in a split decision, found that it did not. We disagree and reverse the conviction of petitioner.

The Shelby County Grand Jury returned an indictment against petitioner on June 12, 1973, on the charge of robbery by use of a deadly weapon. On that date petitioner was serving a sentence on a prior conviction in the Iowa Men's Reformatory, located in Anamosa, Iowa.

On June 15, 1973, a letter from the Shelby County Sheriff's Office with a certified copy of the capias was mailed to the Sheriff of Scott County, Iowa, requesting Iowa officials to detain petitioner for Tennessee authorities.

On June 19, 1973, pursuant to Article IV(a) of the Interstate Compact on Detainers, the District Attorney General of Shelby County made a request to the warden of Iowa State Men's Reformatory for the temporary custody of petitioner for the purpose of trying him on the indictment returned against him in Shelby County.

On June 21, 1973, petitioner, pursuant to Article III(a) of the Compact, requested final disposition of the indictment within one hundred eighty (180) days. This request was later acknowledged as being on file in the Shelby County District Attorney's Office.

On June 22, 1973, the warden of the Iowa State Men's Reformatory acknowledged to the Sheriff of Shelby County that he had received Shelby County's detainer. The warden also advised of two prior detainers issued by Mississippi and Illinois.

Thereafter no follow-up action on petitioner's request for final disposition was taken by the Shelby County District Attorney's Office, and on January 4, 1974, that office was notified by a different warden of the Iowa State Men's Reformatory that the one hundred eighty (180) day period had expired and the Shelby County detainer was null and void under Article III(a) and V(c) of the Compact.

On January 8, 1974, the District Attorney General renewed his request for temporary custody of petitioner, pointing out that a form for request of temporary custody had been mailed to the Iowa institution on June 19, 1973, and that no offer of release to temporary custody had been received from Iowa authorities.

On February 1, 1974, the warden of the Iowa State Penitentiary at Fort Madison, Iowa acknowledged custody of petitioner, and informed the District Attorney General that Iowa authorities had failed to notify Tennessee that petitioner was available for release to temporary custody after receipt of the request petition dated June 19, 1973.

Petitioner was later released by Iowa and tried in Shelby County on April 12, 13, 1974, and was convicted of the crime of robbery

with a deadly weapon. Petitioner was sentenced to fifteen (15) years in the penitentiary to run consecutively with the Iowa sentence.

Prior to trial, petitioner filed a timely motion to dismiss the indictment because of failure to comply with the Interstate Compact on Detainers. The trial court denied this motion, and the Court of Appeals affirmed the denial.

In its answer to the Petition for Certiorari the State makes two arguments. First it argues that the Shelby County District Attorney General was justified in not following up on his request for temporary custody because Iowa authorities gave notice that two other states had filed prior detainers. The State views this as a denial of a request for temporary custody and sufficient to relieve the District Attorney General from the responsibility of bringing the petitioner to trial within the one hundred eighty (180) day period. We disagree.

It should be noted that there is nothing in the record to show that the District Attorney General had knowledge of the correspondence between the Shelby County Sheriff's Office and the Iowa authorities. The Iowa warden's reply to the Shelby County Sheriff's detainer request was not a response to the request for temporary custody, as contemplated in the Compact.

■ But assuming that the District Attorney General was aware of the prior detainers lodged against petitioner, that would not have affected his actions under the Compact as the presence of a detainer lodged against an individual has no effect on the ability of that individual to be temporarily removed from the state in which he is incarcerated and tried in another state. A different situation would be presented, however, if both Mississippi and Illinois had made prior requests for temporary custody so that petitioner could be tried in those states. The correct procedure in that situation would have been for the Shelby County

District Attorney General to have made a motion for a continuance pursuant to Article III(a) of the Act.

The record does not reflect whether Mississippi or Illinois had made requests for temporary custody of the petitioner, but it does reflect that no motion for continuance was made by the District Attorney General.

■ We hold that the prior detainers lodged against petitioner did not justify the State's failure to follow up on petitioner's request for final disposition.

■ Secondly, the State maintains that it should not be prejudiced because Iowa authorities negligently failed to provide Tennessee authorities with an offer of temporary custody as provided by Article V(a) of the Compact. This position necessarily encompasses the view that the burden is on the defendant to insure that he is temporarily released from custody so that he may stand trial in another state. The statute clearly does not place such a burden on the defendant. It merely requires that the defendant cause " . . . to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment . . . ." T.C.A. § 40–3901, Article III(a). The petitioner clearly complied with this provision.

Article V(a) requires the state where the defendant is in custody to make an offer of release to temporary custody whenever a prisoner makes a request for final disposition of charges against him, or when a request for temporary custody is received from a prosecuting officer. Iowa authorities did not comply with this provision, nor did Tennessee authorities make any follow-up inquiry as to why an offer of temporary custody was not made. Petitioner should not be charged with the responsibility of insuring that his captors have complied

with provisions of the law when he has no control over their activities. By placing the burden of insuring compliance on the two states involved, the defendant is less likely to become "the victim of their contributory inaction." *People v. Esposito,* 37 Misc.2d 386, 201 N.Y.S.2d 83, 90 (Queens County Ct. 1960).

An examination of the authorities in the other jurisdictions which have considered analogous situations presented under similar statutes convinces us of the soundness of this decision.

■ The Maryland Court of Appeals in *State v. Barnes,* 273 Md. 195, 328 A.2d 737 (Ct.App.1974), reviewed the purposes of the Interstate Compact on Detainers Act:

"It has long been recognized that detainers for untried charges—whether interstate or intrastate in nature—may result in 'undue and oppressive incarceration.' Undue delay in the disposition of such detainers has been recognized as minimizing the possibility that a defendant incarcerated might receive a sentence at least partially concurrent with the term he is serving and that under the procedures widely practiced, the duration of his imprisonment may be increased and the conditions under which his confinement must be served greatly worsened because of the pendency of an additional charge against him and the potentiality of additional punishment. Similarly, it has been recognized that a long delay in the trial of the detainer charge may impair the ability of the accused to defend himself since he is often in a prison far removed from the place where the added offense allegedly took place, resulting in an impairment of his ability to keep apprised of the whereabouts of witnesses, and isolates him from the ready availability of the assistance of his counsel. It has even been stated that the pendency of such a detainer constitutes a serious impediment to the prisoner's ability to take maximum advantage of the institutional opportunities for rehabilitation. [citations omitted] In some jurisdictions the pendency of such a detainer precludes the prisoner from eligibility for parole consideration; in others it excludes him from placement on work-release programs, and it has been known, because of the potentiality of escape, to cause the prisoner to be confined under more strict and harsh security measures than might otherwise be applicable to his case, except for the detainer on file." 328 A.2d at 743.

The remedial nature of this legislation requires that it should be construed liberally in favor of those it was intended to benefit. *Commonwealth v. Fisher,* 451 Pa. 102, 301 A.2d 605 (1973).

The adoption of the dismissal sanction of V(c) was not to protect the defendant from being prejudiced if his trial were delayed for more than one hundred eighty (180) days after demand, but "was regarded as essential to produce general compliance with the statutory mandate." *State v. Lippolis,* 107 N.J.Super. 137, 257 A.2d 705, 710 (1969).

■ All delay of trial in excess of one hundred eighty (180) days does not, however, mandate dismissal of the indictment. Article III(a) of the Act provides " . . . that for good cause shown . . . the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Here there was no motion for a continuance.

In a closely analogous case, *Commonwealth v. Wilson,* 231 Pa.Super. 451, 331 A.2d 792 (1974), the defendant was not brought to trial because of the inadvertence of the trial judge, even though the District Attorney General had complied with the requirements of the statute. The Pennsylvania Superior Court in affirming dismissal of the indictment, felt that " . . . it is unimportant whether delay is occasioned by the prosecutor's office or by the court; so

long as the delay is neither reasonable nor necessary, and not occasioned by the defendant, the legislative policy must be heeded." 331 A.2d at 794.

The judgment of the Court of Criminal Appeals sustaining the conviction of petitioner is reversed and the indictment is dismissed with prejudice.

COOPER and HENRY, JJ., and DYER, Special Justice, concur.

HARBISON, J., dissents.

HARBISON, Justice (dissenting).

I respectfully dissent from the decision of the majority of the Court, which sets aside and voids a conviction of the petitioner on charges of armed robbery. The majority holds that failure of the State to bring the petitioner to trial within 180 days after receipt of his request for final disposition requires dismissal of the indictment pursuant to Article III of the Interstate Compact on Detainers, T.C.A. § 40–2901 et seq., regardless of whether the sending state offers custody to the requesting state.

The trial judge and the majority of the Court of Criminal Appeals reached a contrary conclusion, and I agree with their decision.

Transfer of a prisoner from a state having him in custody to a requesting state requires co-operative action on the part of of the officials of both jurisdictions involved. In the present case the prisoner, pursuant to the provisions of Article III of the Interstate Compact, requested final disposition of his case. The District Attorney General of Shelby County, pursuant to the provisions of Article IV, with approval of the judge of the criminal court of that county, also made a proper request for the temporary custody of the petitioner.

Under the provisions of Article V, when a request is made by either or both of these methods:

" . . . the appropriate authority in a sending state shall offer to deliver temporary custody of such prisoner to the appropriate authority in the state where such indictment, information or complaint is pending against such person in order that speedy and efficient prosecution may be had."

The statute expressly provides that if the request is made by the prisoner, this offer of temporary custody shall accompany the written notice sent to the state where the proceedings are pending.

The Iowa authorities wholly failed to comply with the provisions of Article V, and later acknowledged this failure. There was no offer of temporary custody made by the Iowa officials, either accompanying the request of the prisoner, or in response to the request from the District Attorney General of Shelby County. Not until February 1, 1974 did they ever offer custody to the Tennessee officials.

Under these circumstances, it is my opinion that the Tennessee officials have not violated the provisions of the Interstate Compact on Detainers, and that the officials in Tennessee are not responsible for such violation on the part of the Iowa authorities.

I agree with the conclusion stated in the majority opinion of the Court of Criminal Appeals that the orderly processes of criminal justice in Tennessee should not be disrupted by oversight or omission on the part of officials of the sending state.

The Maryland case cited by the majority, *State v. Barnes,* 273 Md. 195, 328 A.2d 737 (1974), arose under and actually involved an *intrastate* statute, not the Interstate Compact, and the delay in bringing the prisoner to trial resulted from actions of Maryland officials, within that state, in transferring the prisoner from a state institution to the county of trial.

In the Pennsylvania case cited, *Commonwealth v. Fisher,* 451 Pa. 102, 301 A.2d 605

(1973), the sending state promptly offered temporary custody to the Pennsylvania officials. The delay involved was wholly that of the requesting state in taking the prisoner into custody. In *State v. Lippolis,* 107 N.J.Super. 137, 257 A.2d 705 (1969), officials of both the sending and the receiving states appear to have been derelict in their duties, but the sending state had properly offered temporary custody and this offer had been promptly accepted. The delay occurred thereafter in consummating the details of the transfer.

In the instant case, the Tennessee officials acted promptly in taking custody of the prisoner, after it was offered to them by the Iowa authorities.

Under the circumstances shown in this case, in my opinion the judgment of the Court of Criminal Appeals should be affirmed.