THE STATE OF OHIO, APPELLANT, v. FERGUSON, APPELLEE.

(No. 87AP-65 — Decided September 15, 1987.)

*Michael Miller,* prosecuting attorney, and *Bonnie L. Maxton,* for appellant.

*James Kura,* county public defender, and *Barbara J. Slutsky,* for appellee.

HOFSTETTER, J. This is an appeal from the Franklin County Court of Common Pleas' dismissal of appellee's indictment for complicity to commit aggravated robbery because appellee's right to a speedy trial was violated under Article III of the Interstate Agreement on Detainers ("IAD"), adopted under R.C. 2963.30.

Appellee, Joe Franklin Ferguson, was indicted by the Franklin County

Grand Jury on April 5, 1983 for complicity to commit aggravated robbery. Appellant, the state of Ohio, claims that, because appellee was standing trial, serving as a witness, or incarcerated in many different jurisdictions, Ohio could not obtain temporary custody of him until April 1986, and the Franklin County trial could not be scheduled until June 4, 1986. The appellee also requested and received three continuances of the trial until August 28, 1986. On August 27, 1986, appellee filed a motion to dismiss the indictment based on appellant's alleged violation of appellee's speedy trial rights under the United States and Ohio Constitutions and Articles III and IV of the IAD, which gives criminal defendants charged with crimes in several states certain speedy trial rights.

On October 9, 1986, a hearing on appellee's motion was held. The trial court held that appellant had violated R.C. 2963.30, Article III of the IAD, by not bringing appellee to trial within one hundred eighty days of receiving appellee's request for disposition of the Franklin County charges. Therefore, the trial court dismissed the indictment pursuant to R.C. 2963.30. Appellant has appealed that decision.

Originally, the robbery complaint against appellee was filed in Franklin County Municipal Court on November 22, 1982. The Columbus Police Department, on December 23, 1982, then issued a detainer on appellee with the Rock County, Wisconsin, Sheriff's Department, where appellee was being tried on robbery charges. Rock County informed the Columbus Police Department that appellee had been transferred to Waupun State Correctional Facility in Wisconsin where he was serving three concurrent ten-year sentences for the Rock County crimes. Thereafter, the Columbus Police Department, on January 3, 1983, issued another detainer on appellee with Waupun prison.

The appellee then executed a request on January 12, 1983, on a form entitled "Agreement on Detainers: Form I," which acknowledged notice of the Columbus detainer and requested that "a final disposition be made of the above-stated untried indictments, informations or complaints." Appellee forwarded the request form to the Waupun prison records officer, who sent the request to the Columbus Police Department instead of the Franklin County Prosecutor and court as required by R.C. 2963.30. The certificate of inmate status, which the Waupun prison was also required to send with the request pursuant to R.C. 2963.30, was either never sent or lost.

A Franklin County assistant prosecutor, however, discovered appellee's request for disposition of the charges around March 28, 1983 while reviewing the Columbus Police Department's summary of the case in preparation for grand jury proceedings. The prosecutor noted on the case file, "* Note — Demand to be brought to trial signed 1-12-83." After appellee was indicted on April 5, 1983, the Franklin County Sheriff's Department wrote to Waupun prison and also placed a detainer on appellee pursuant to R.C. 2963.30 based upon the warrant on the indictment.

Neither appellant the state of Ohio nor Wisconsin, however, took any further action to bring appellee to trial on the Franklin County charges until appellee executed a second request for final disposition of the charges on September 27, 1985, which was sent to the Franklin County Prosecutor's office. At this time, appellee was incarcerated in Minnesota as part of a prisoner housing agreement with Wisconsin, and Minnesota offered Franklin County temporary custody of appellee. Franklin County accepted the offer,

but did not obtain temporary custody of appellee until April 10, 1986, because appellee was in the temporary custody of Illinois in December and February 1986 standing trial there on robbery charges.

In addition to the foregoing, the trial court found that:

*"On December 20, 1982,* the appellee was sentenced in Rock County, Wisconsin to Waupun prison to three concurrent ten-year sentences for armed robbery. As part of his sentence, appellee agreed to testify for the prosecution in Rock County for crimes in which he participated. Appellee was transported from Waupun prison to Rock County several times for this purpose.

*"From January 17, 1983 to January 27, 1983,* appellee was in Rock County, Wisconsin.

*"From February 1, 1983 to February 18, 1983,* appellee was transferred from Waupun prison to Dane County, Wisconsin for his appearance on local charges.

*"From February 28, 1983 to March 4, 1983,* appellee was in Dane County, Wisconsin again.

*"From April 19, 1983 to December 20, 1983,* appellee was incarcerated in Shelby County, Tennessee where he pleaded guilty and was given a ten-year sentence for armed robbery to be served consecutively to the Wisconsin sentence.

*"From April 3, 1984 to April 12, 1984,* appellee was in Rock County, Wisconsin.

*"From May 8, 1984 to May 11, 1984,* appellee was in Rock County, Wisconsin again.

*"On August 15, 1984,* Wisconsin sent the appellee to Minnesota as part of a housing agreement between the two states. Franklin County was never notified of the movement, nor was the appellee made available to Franklin County at that time.

*"From December 17, 1985 until March 5, 1986,* the appellee was unavailable because he was in Waukeegon, Illinois where he was tried and sentenced to twenty-five years imprisonment concurrent with the Wisconsin sentences."

After the presentation of this information at the hearing on appellee's motion to dismiss, the Franklin County Common Pleas Court ruled that appellant had violated R.C. 2963.30, Article III of the IAD, because appellant failed to bring appellee to trial within one hundred eighty days of appellee's January 12, 1983 request for disposition of the detainer. The court found that the Franklin County Prosecutor's office had notice of the request around March 28, 1983 and that appellee substantially complied with R.C. 2963.30, Article III of the IAD. In determining whether the one hundred eighty days had elapsed from the appellee's request until the trial date, the trial court did not count all the times that appellee was in Dane County or Rock County, Wisconsin.[1] The court also found that appellant exceeded the one-hundred-eighty-day limitation on or about June 4, 1985 — one year before the case was set for trial. Therefore, the trial court dismissed the indictment against appellee.

Appellant has timely appealed the lower court's decision and asserts the following assignment of error:

"The trial court erred in dismissing appellant's [*sic*] indictment and in finding that appellant's [*sic*] speedy

---

[1] The trial court referee erroneously stated in his conclusions of law that appellee was in "Dane County, Illinois." According to the exhibits introduced at trial, this should be Dane County, Wisconsin.

trial rights under Article III of the Interstate Agreement on Detainers were violated."

R.C. 2963.30, Article III of the IAD, states:

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."

Appellant has asserted that the trial court erred in holding appellee's speedy trial rights under Article III of the IAD were violated. (Appellant obviously erroneously stated "appellant's" rather than "appellee's" speedy trial rights in the assignment of error.) Appellant has set forth two arguments: (1) that appellee's request for disposition of the detainer was insufficient as a matter of law, and (2) that the trial court erred in finding that appellee was available for trial during certain time periods. We will discuss the sufficiency of appellee's request first.

### Sufficiency of Request

R.C. 2963.30 adopts the requirements that the accused must make a request under Article III of the IAD for a speedy trial. Ohio law is unclear, however, on what constitutes a request for a speedy trial. The only two reported Ohio decisions[2] discussing prisoner requests for a speedy trial under Article III of the IAD seem to set forth opposing views as to what is required of an accused.

The Court of Appeals for Summit County strictly viewed the accused's responsibilities under the IAD Article III in *State* v. *Reitz* (1984), 26 Ohio App. 3d 1, 26 OBR 168, 498 N.E. 2d 163. In *Reitz,* the court held that the one hundred eighty days did not begin to run until the prosecutor received the

---

[2] Appellant cites the unreported opinion of *State* v. *Grubb* (Aug. 27, 1981), Franklin App. No. 81AP-217, unreported, and infers that this court considered the present issue in *Grubb* favorable to appellant. But in *Grubb,* the defendant never made any type of request for a disposition of the charges or a speedy trial. The defendant only requested a continuance until a Michigan charge was determined.

request and the certificate of inmate status, even though the defendant had filed the request five months earlier.

The United States District Court of Ohio, however, has taken a more liberal view of the actions a defendant must take to file a request for disposition of a detainer under Article III. In *United States* v. *Mason* (N.D. Ohio 1973), 372 F. Supp. 651, the defendant was imprisoned in Ohio serving an Ohio sentence when a federal detainer was placed upon him. He then made a request for disposition of the federal detainer. Subsequently, the defendant was paroled in Ohio and was sent to Michigan to serve a sentence there involving Michigan crimes. No one informed the federal government that the defendant had been moved and the one hundred eighty days ran, a situation similar to the case *sub judice*. The court in *Mason* applied the IAD and held that it was not the defendant's duty to inform the federal government that he was now in Michigan; rather, the government had the burden of finding him.

The Supreme Court of Ohio has not considered what constitutes a request for speedy trial under the IAD, but in *Daugherty* v. *Solicitor for Highland County* (1971), 25 Ohio St. 2d 192, 54 O.O. 2d 300, 267 N.E. 2d 431, the Supreme Court of Ohio held that a federal penitentiary inmate's letters to the appropriate Ohio prosecutor and judge requesting either a trial or dismissal of an Ohio charge, although informal, constituted a general request for a speedy trial. The court stated that "[w]here an inmate in a penal institution has made a diligent, good-faith effort to call to the attention of the proper authorities in another state that he desires a charge pending against him in that state disposed of, by trial or dismissal, he is entitled to have such request acted upon. The failure of the authorities to do so con-

stitutes the denial of a speedy trial." *Daugherty, supra,* at 193, 54 O.O. 2d at 300, 267 N.E. 2d at 432.

Other states have issued varying decisions on what constitutes a request for a speedy trial under the IAD. Some states have held that an accused must strictly comply with the request requirements set forth in Article III. See *State* v. *Thomas* (Iowa 1979), 275 N.W. 2d 211; *Ekis* v. *Darr* (Kan. 1975), 539 P. 2d 16; *Johnson* v. *State* (1980), 154 Ga. App. 512, 268 S.E. 2d 782; and *People* v. *Daily* (1977), 46 Ill. App. 3d 195, 360 N.E. 2d 1131. Whereas, other states have held that the accused may liberally comply with the Article III request requirements. See *Nelms* v. *State* (Tenn. 1976), 532 S.W. 2d 923; *Pittman* v. *State* (Del. 1973), 301 A. 2d 509; *State* v. *Arwood* (1980), 46 Ore. App. 653, 612 P. 2d 763; *Rockmore* v. *State* (1974), 21 Ariz. App. 388, 519 P. 2d 877; and *State* v. *Seadin* (1979), 181 Mont. 294, 593 P. 2d 451.

We believe the policy reasons for Ohio's enacting the IAD are the key to the approach which should be taken when courts review the sufficiency of an accused's compliance with the IAD. R.C. 2963.30, Article I, states that the IAD's purpose is to eliminate uncertainties which obstruct prisoner treatment and rehabilitation, to encourage the orderly and expeditious disposition of charges, and to provide cooperative procedures between the states. Article IX of the IAD also states that the IAD is intended to be liberally construed.

Given the purpose and liberal policy of the IAD, we do not adopt a test which requires a defendant to strictly comply with Article III of the IAD. A more appropriate test, which adheres to the liberal policy of the IAD and the Ohio Supreme Court's reasoning in *Daugherty*, is a requirement that the accused substantially comply with Article III of the IAD.

The District of Columbia Court of

Appeals in *McBride* v. *United States* (D.C. App. 1978), 393 A. 2d 123, 128, certiorari denied (1979), 440 U.S. 927, explained a defendant's duty to substantially comply with the IAD by stating that the test turns "on whether he or she [the defendant] has done everything that the IAD jurisdictions could reasonably expect, given their [the states'] own degree of compliance with a scheme which they [the states] have the principal responsibility to implement."

The Tennessee Supreme Court also explained the accused's and the states' burden of complying with the IAD in *Nelms, supra.* The *Nelms* court determined that after the defendant requests final disposition of charges, the defendant "should not be charged with the responsibility of insuring that his captors have complied with provisions of the law when he has no control over their activities." *Nelms, supra,* at 926-927. The court stated that the IAD clearly does not place the burden on the defendant to ensure that he is temporarily released from custody to stand trial in another state.

The Delaware Supreme Court has agreed with Tennessee that the burden of bringing the defendant to trial once he has requested disposition of the charge lies with the states involved. In *Pittman* v. *State, supra,* at 514, the Delaware Supreme Court stated that "* * * the prisoner, who is to benefit by the statute [the IAD], is not to be held accountable for official administrative errors which deprive him of that benefit."

Thus, we believe there is first a burden on the defendant to substantially comply with the IAD request requirements by doing everything that could reasonably be expected. Once the defendant fulfills this burden, however, the burden is then placed upon the states to cooperate and bring the accused to trial within one hundred eighty days.

After reviewing the facts of the case *sub judice,* we believe that the appellee herein substantially complied with the IAD, Article III, by completing the request form and forwarding it to the Waupun prison officials on January 12, 1983. The Waupun prison authorities then had the burden of mailing the request, along with a certificate of inmate status to the proper Ohio prosecutor and court. Waupun prison instead mailed the appellee's January 12, 1983 request to the Columbus Police Department. We do not know whether the certificate of inmate status accompanied the request or was lost. However, many states have held, and we agree, that an official's failure to send the certificate of inmate status should not vitiate an inmate's right to a speedy trial once requested. *Rockmore* v. *State, supra; People* v. *Esposito* (Queens Cty. Ct. 1960), 37 Misc. 2d 386, 201 N.Y. Supp. 2d 83; and *State* v. *Seadin, supra.*

Appellee did everything that could reasonably be expected of him in initiating a request under the IAD, Article III. The fact that Waupun prison did not send the request to the proper Ohio authorities and that the certificate of status was either not sent by Waupun prison or was lost will not destroy the appellee's rights under the IAD. The prosecutor's actual receipt of the request on approximately March 28, 1983 also effectively cured the mistake of mismailing the request to the wrong Ohio official.[3]

### Tolling of Time

Appellant has also asserted that

---

[3] See *State* v. *Arwood, supra,* which held that the accused has met his burden under the IAD as long as the proper official eventually receives the accused's request.

the trial court did not correctly toll the running of the time when appellee was in another jurisdiction either on trial or serving as a witness. We agree with appellant. that the trial court did not toll the running of time for certain periods of time which should have been tolled under the IAD.

R.C. 2963.30, Article VI of the IAD, states that:

"(a) In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."

"Unable to stand trial" under the IAD was defined in *United States* v. *Mason, supra,* 372 F. Supp. 651, to include a time period when the accused is standing· trial in another state. According to the federal district court in *Mason,* the running of the time is tolled during this time period. In *State* v. *Minnick* (Fla. App. 1982), 413 So. 2d 168, the court held that the running of the time is also tolled whenever the accused is in the custody of another state and unavailable for trial.

The trial court only tolled the running of the time when the appellee was on trial in Illinois and Tennessee. The running of the time should have also been tolled for the periods when appellee was serving as a witness or on trial in Wisconsin because, according to Article VI(a) of the IAD, appellee was also "unable to stand trial" in Ohio during these periods.

However, this court will not toll the running of the time for the periods when appellee was in Minnesota under a prisoner housing agreement. The period that the appellee was in Minnesota until Ohio retained custody of appellee amounts to approximately seventeen months after deducting the approximate three-month period that the running of the time was tolled while appellee was on trial in Illinois. Appellant alleges that appellant should not be prejudiced by Waupun prison's failure to notify appellant when the appellee was moved to Minnesota. As discussed in *Nelms, supra,* however, the sending state's failure to inform the receiving state of the accused's whereabouts or offer temporary custody does not justify the receiving state's inability to bring the accused to trial within one hundred eighty days. The additional burden must be placed on the receiving state rather than the defendant. *Mason, supra.*

Therefore, since the running of the time for the period that appellee was in Minnesota is not tolled, appellant has failed to bring the appellee to trial within one hundred eighty days, even if the running of the time for periods not properly tolled by the trial court are tolled. This court finds that there was no reasonable excuse for this delay.

For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCORMAC and BRYANT, JJ., concur.

EDWIN T. HOFSTETTER, J., retired, of the Eleventh Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.