**STATE of Tennessee, Appellant,**

v.

**Alva LOCK, Appellee.**

**STATE of Tennessee, Appellant,**

v.

**Al LOCKE, Appellee.**

Court of Criminal Appeals, at Nashville.

May 20, 1992.

---

Charles W. Burson, Atty. Gen. of Tenn., and Kathy M. Principe, Asst. Atty. Gen., Nashville, for appellant.

Lawrence Ray Whitley, Dist. Atty. Gen., Gallatin, for Sumner County.

Joseph D. Baugh, Dist. Atty. Gen., and Tim Easter, Asst. Dist. Atty. Gen., Franklin, for Williamson County.

N. Reese Bagwell, Clarksville, for appellees.

## OPINION

TIPTON, Judge.

This consolidated appeal by the state relates to charges against the defendant[1] in Sumner and Williamson Counties which were dismissed under the Interstate Compact on Detainers (ICD). T.C.A. § 40–31–101. The defendant was incarcerated in Kentucky when he initially invoked the ICD by requesting trial of the various charges pending against him in Tennessee. We affirm the dismissals. Since the dispositive issues and the proof thereon are distinctly different, the cases will be considered separately.

## SUMNER COUNTY

An arrest warrant was issued in Sumner County in December, 1986, charging the defendant with obtaining goods by false pretense. On March 9, 1988, while the warrant was still pending, a presentment was returned charging the defendant with this offense as an habitual criminal.

The hearing on the defendant's motion to dismiss was held on October 2, 1990, and the following facts were presented—primarily by documents which were stipulated. The defendant was convicted and sentenced in Trigg County, Kentucky, on August 18, 1987. On August 21, 1987, while in jail in Kentucky, the defendant executed ICD forms which requested final disposition of the Sumner County charge within 180 days, requested appointment of counsel, waived extradition, and provided his voluntary consent to be transferred for trial. These forms, along with Kentucky's offer of temporary custody, were sent to Tennessee. The Sumner County District Attorney General received the documents on September 8, 1987. The record reflects that the defendant sent similar forms to

---

1. The defendant's signature on documents in the record reflects the name Lock, as provided in the Sumner County presentment, but the Williamson County presentment uses Locke.

prosecutors in three other Tennessee counties (Putnam, Coffee and Williamson), an Alabama county, and the middle federal district of Tennessee for other pending charges.

On December 21, 1987, the Sumner County District Attorney General executed a Request for Temporary Custody seeking the defendant's return from Kentucky for trial. Kentucky authorities received the request on December 28, 1987.

On February 1, 1988, the defendant pled guilty to an offense in the United States District Court for the Middle District of Tennessee in Nashville with sentencing to occur on March 16, 1988. On August 17, 1988, the defendant, being held in a Kentucky prison, filed a *pro se* motion to dismiss the Sumner County charge asserting that since he had not been tried within 180 days of his request, as provided by Article III(c) of the ICD, the case should be dismissed with prejudice. No action was taken by the trial court on this motion.[2]

The record contains letters between the defendant and his various counsel in the federal and other county cases. The defendant wrote a letter to the Sumner County District Attorney General on February 15, 1989, trying to resolve his case by plea bargain. In the letter, the defendant states that Sumner County placed a detainer warrant against him in 1987 and another warrant in 1988. On February 21, 1989, the defendant wrote the State Attorney General in Nashville, seeking help on resolving his remaining cases in the various Tennessee counties and claiming that none of the prosecutors had complied with the provisions of the ICD.

Also, a document reflects that the defendant was in Putnam County in May, 1989, and was transferred to Houston County after his Putnam County charges were dismissed. On June 8, 1989, the defendant escaped from the Houston County jail.

At the hearing, neither the state nor the defense called any witnesses, apparently relying upon the documents which were introduced and other stipulations. The state's basic argument to the trial court was that the defendant's escape negated his request for final disposition. It relied on Article III(f) which provides that a prisoner's escape from custody after making the request for final disposition "shall void the request." The trial court reasoned that the escape contemplated by the statute was one which would prevent the state from meeting its obligations under the ICD. Thus, since the escape in no way interfered with the state returning the defendant to Sumner County for final disposition within 180 days of his request, the trial court held that the escape did not void the request. It held that the defendant was entitled under Article III to the dismissal of the presentment with prejudice because the state failed to comply with the time obligations provided in the ICD.

The order of dismissal was entered on October 19, 1990. However, on October 12, 1990, the state filed a "Motion to Reconsider, to Vacate and for an Additional Evidentiary Hearing" with attached exhibits. The state alleged many specific facts not presented at the October 2 hearing and asserted that the new facts showed that the defendant was not available to Sumner County authorities. The state was attempting to show that the 180 days had not run because, under Article VI(a), the running of the time period is tolled "for as long as the prisoner is unable to stand trial." The state's motion was heard by the trial court on November 30, 1990, more than 30 days after the entry of the order of dismissal. The defendant asserted that the trial court did not have jurisdiction to reconsider or rehear the matter because the time within which the trial court could act on the matter had run. The trial court essentially ruled that it inadvertently entered the order of dismissal and held that it would effectively be "re-entered" as of November 30. As to the merits of the state's motion, the trial court essentially held that the state had the opportunity to present the

---

**2.** The record reflects that similar motions filed in the Coffee and Putnam cases resulted in the dismissal of the Coffee County charges on October 31, 1988, and the Putnam County charges on May 22, 1989.

evidence at the October 2 hearing and it would not be allowed to reopen the case for further evidentiary hearing.

However, the state was allowed to make a record. In this regard, the state submitted various documents and the testimony of Rose Hill, the Tennessee extradition officer. The evidence presented, from the state's perspective, related to the defendant being delivered to other jurisdictions and to his ultimately fighting his return to Tennessee.

On appeal, the state asserts that the trial court erroneously dismissed the presentment because the proof at both hearings showed that the defendant was unavailable for trial through no fault of the state. Underlying this contention is the state's assertion that the trial court abused its discretion in not considering the evidence submitted at the second hearing. Also, it persists in its claim that the June, 1989, escape voided the August, 1987, request for final disposition.

In response, the defendant asserts that the appeal should be dismissed because the notice of appeal was not filed within 30 days of the entry of the judgment on October 19, 1990. Also, he contends that the trial court did not have jurisdiction to rehear the matter on November 30, 1990. Finally, he claims that the trial court acted properly in refusing to allow further evidence in the case.

■ An appeal as of right is initiated by the filing of a notice of appeal, T.R.A.P. 3(e), within 30 days of the entry of the judgment being appealed. T.R.A.P. 4(a). However, if a timely motion (1) for judgment of acquittal, (2) for a new trial, (3) for arrest of judgment, or (4) for a suspended sentence is filed, the 30 days run from the entry of the order determining such motion or motions. T.R.A.P. 4(c). No other motion, including one for rehearing, is allowed to suspend the running of the appeal time from the entry of the judgment. *State v.*

*Bilbrey*, 816 S.W.2d 71, 74 (Tenn.Crim.App. 1991). In fact, this Court has noted that "there is no provision in the Tennessee Rules of Criminal Procedure for a 'petition to reconsider' or a 'petition to rehear.'" *State v. Ryan*, 756 S.W.2d 284, 285 n. 2 (Tenn.Crim.App.1988).

■ In this case, the state's notice of appeal was filed on December 11, 1990, which would be timely relative to the November 30 hearing but untimely relative to the October 19 judgment. Therefore, a question arises as to the validity of the order entered on November 30, 1990.

■ As a general rule, a trial court's judgment becomes final 30 days after its entry unless a timely notice of appeal or one of the specified post-trial motions is filed. T.R.A.P. 4(a) and (c). Once the judgment is final, the trial court generally loses jurisdiction to amend it. *State v. Moore*, 814 S.W.2d 381 (Tenn.Crim.App.1991); *Ray v. State*, 576 S.W.2d 598, 602 (Tenn.Crim. App.1978). Thus, the entry of the order dismissing the case on October 19, 1990, would indicate that the trial court had no jurisdiction to conduct the hearing sought by the state. *See State v. Hamlin*, 655 S.W.2d 200 (Tenn.Crim.App.1983). However, the trial court specifically stated that the entry of the order on October 19 was inadvertent and unintended by it. In crediting this statement, we view the trial court as retaining the authority to correct its error which arose from oversight. *See State v. Moore, supra*, 814 S.W.2d at 383; Tenn.R.Crim.P. 36. Therefore, it had the authority to vacate its October 19 order and to enter the order as of November 30, 1990. Under these circumstances, the state's appeal is before us in timely fashion.[3]

■ However, we hold that the trial court did not abuse its discretion in refusing to reopen the evidence or to reverse its prior ruling. Both parties had the opportunity at the October 2 hearing to present

---

**3.** Even if we held that it was untimely, we note that we could waive the filing of the notice of appeal in the interest of justice. T.R.A.P. 4(a). In *State v. Burrow*, 769 S.W.2d 510 (Tenn.Crim. App.1989), the Court granted such relief under

similar facts to this case, i.e., the state was untimely in its appeal because it waited on the trial court's ruling on its motion to reconsider the dismissal of an indictment.

whatever evidence they thought bore on the issues. The state had no right to present further evidence, which could have been available at the first hearing, in order to change the result. The trial court's statement regarding the state's position was as follows:

Now the State comes in and wishes to present more evidence, and it appears to be analogous to wanting another trial on newly discovered evidence, something of that nature. But this is not newly discovered evidence. The evidence has been available all the time, although this is highly technical.

. . . . .

But to allow this motion now would be giving the state a go at the defendant and then—well, we didn't have it so that's too bad and we understand that and rule in favor of the defendant. Then we come and say, well, I found out so and so now. We're going to have another go at this defendant on the same proposition, but because we have found something else that we had all along. Under those circumstances I feel that there is in the procedure and in the pleadings and in somewhat fairness that the motion now filed to reconsider be denied.

The trial court's refusal to allow further evidence was well within its discretion.

Most of the arguments by the state are premised upon the evidence received at the November 30 hearing. Given the fact that the trial court properly refused to consider the evidence, we, likewise, will not review such evidence in considering the merit, or lack thereof, of the dismissal of the presentment based upon the record developed at the October 2 hearing.

■ The record of the October 2 hearing reflects that the defendant made an appropriate request for final disposition of the charge as required by the ICD. The 180 day provision began to run when the district attorney general received the request on September 8, 1987. *State v. Moore*, 774 S.W.2d 590 (Tenn.1989). Although the documents reflect that the defendant was in the temporary custody of several other jurisdictions subsequent to his request for final disposition, they do not indicate for what periods of time. The burden is on the state to obtain the temporary custody of the defendant and to dispose of his case within the 180 days. *See Nelms v. State*, 532 S.W.2d 923 (Tenn. 1976). In this regard, the burden is on the state to prove that the time period had not run because the prisoner had been unable to stand trial as provided under Article VI(a). The state did not meet this burden.

■ Relative to the escape, the state would have us hold that a request for final disposition which was effective in September, 1987, is voided by the defendant's escape from jail in June, 1989. We do not view Article III(f) as requiring such a result and we adopt the trial court's reasoning therefor. Under the ICD, when the state fails without cause to dispose of a prisoner's case within 180 days of the prisoner's valid request, "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending *shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.*" Article V(c) (emphasis added). Under the record in this case, the voiding of the defendant's request in June, 1989, by virtue of his escape had no effect upon the trial court's earlier mandatory obligation to dismiss the charge.

The ICD has been held to be remedial in nature and to require liberal construction in favor of the prisoners it is intended to benefit. *Nelms v. State, supra*, 532 S.W.2d at 927. In *Nelms*, quoting from *Commonwealth v. Wilson*, 231 Pa.Super. 451, 331 A.2d 792, 794 (1974), the Supreme Court provided that " 'it is unimportant whether delay is occasioned by the prosecutor's office or by the court; so long as the delay is neither reasonable nor necessary, and not occasioned by the defendant, the legislative policy must be heeded.' " 532 S.W.2d at 927–928. Clearly, the unexcused delay in this case which made further prosecution untimely was not occasioned by the defendant and his after the fact escape was irrelevant to the ICD mandates. The Sum-

ner County presentment was properly dismissed.

## WILLIAMSON COUNTY

The state's brief indicates that charges were filed in Williamson County against the defendant in October, 1986. The record reflects that a presentment was returned by the Williamson County Grand Jury on November 9, 1987, charging the defendant with passing a worthless check in the amount of fifteen thousand dollars in October, 1986. The hearing on the defendant's motion to dismiss the presentment was held on December 3, 1990. The only witness who testified was Rose Hill, a Tennessee extradition officer, but documents were presented, as well.

The state's brief provides a chronology of relevant events which we expand from our review of the record:

October, 1986—Charges filed in Williamson County against defendant.

August 18, 1987—Defendant convicted in Kentucky.

August 21, 1987—Defendant executed request for final disposition of Williamson County charges.

August 22 or 23, 1987—Defendant taken into federal custody in Davidson County, Tennessee. (Hill testimony).

September 1, 1987—Certificate of inmate status in Kentucky executed.

September 4, 1987—Kentucky offer to deliver temporary custody executed.

September 8, 1987—Williamson County Circuit Court Clerk received ICD documents from Kentucky.

September 9, 1987—District Attorney general received ICD documents from Kentucky.

November 9, 1987—Grand jury returned presentment against defendant.

February, 1988—Meeting of Ms. Hill and representatives from various Tennessee counties. (Hill testimony).

March 22, 1988—Defendant returned to Kentucky by federal authorities. (Hill testimony).

April, 1988—Various Tennessee counties lodged detainers with Kentucky Department of Correction. (Hill testimony).

June 15, 1988—Defendant filed petition with Kentucky governor challenging Putnam County's request for temporary custody.

August 9, 1988—Defendant filed *pro se* motion to dismiss Williamson County case.

August 17, 1988—Williamson County Circuit Court Clerk notified district attorney general that motion to dismiss was set for August 29, 1988 (no record of any hearing).

October 26, 1988—Defendant filed petition for writ of habeas corpus in Oldham County Circuit Court, Kentucky, regarding dismissal of Tennessee detainers.

February 28, 1989—Defendant's Kentucky petition for writ of habeas corpus dismissed. (Hill testimony).

April 4, 1989—Defendant brought to Putnam County.

May, 1989—Putnam County charges dismissed and defendant taken to Houston County.

June 8, 1989—Defendant escaped from Houston County Jail.

June 20, 1989—Williamson County District Attorney General filed motion to dismiss the defendant's motion to dismiss due to defendant's escape.

July 10, 1989—Williamson County Circuit Court order granted state's motion to dismiss.

August 21, 1990—Tennessee governor requested defendant's extradition from Florida.

The proof adduced at the hearing provides far from a clear picture of the circumstances, but Ms. Hill testified regarding various material facts. She stated that, at the relevant times, she had been the Tennessee official designated to handle ICD cases. She said that notice was sent to Trigg County, Kentucky, showing that the defendant had charges pending in Williamson County, but she did not know when it was sent. She mentioned, though, that the Tennessee counties sent their "charg-

ing documents ... on his pre-trial situation in Kentucky."

Ms. Hill testified that, after his Kentucky convictions, the defendant was turned over to the federal authorities in Tennessee and was held in Nashville until his federal sentencing on March 22, 1988. At that time, he was returned to Kentucky. She stated that she did not know if the federal authorities received custody under the ICD, although she acknowledged that they were parties to the ICD.

Ms. Hill stated that she had a meeting in February, 1988, with representatives of the various Tennessee counties in order to develop a system by which disposition of the defendant's cases could be accomplished in orderly fashion.[4] She said she did not seek to obtain custody of the defendant from the federal authorities nor was she aware of any such attempt by Williamson County authorities. She explained that she believed that the state did not have the authority to obtain the defendant. In fact, she said that there had been some discussion in March, 1988, about Williamson County taking custody of the defendant from the federal authorities, but she had told Williamson County officials that they could not do so and that he had to be returned to Kentucky.

Ms. Hill's testimony reflects that Kentucky had notified her that the federal authorities had custody of the defendant in Tennessee and that Ms. Hill had talked with the offices of the U.S. Attorney and U.S. Marshall about him. It is apparent that Ms. Hill viewed Kentucky, not the federal government, as the only jurisdiction to provide temporary custody of the defendant to Williamson County.

The trial court stated that, under the ICD, it was incumbent upon the state to have filed a motion for continuance to show good cause why the defendant was unable to stand trial within the required time period. In dismissing the charge, the trial

court relied upon the fact that no such motion had been filed.

The state asserts that the trial court erred in dismissing the case because:

(1) no detainer had been placed upon the defendant when he requested final disposition of his case;

(2) the defendant was unavailable to the state for such periods of time as to toll the running of the 180 days;

(3) the defendant's escape from jail negated his request under the ICD; and

(4) the defendant was present in Williamson County by virtue of extradition and the ICD was, therefore, not involved.

■ As to the detainer, the state asserts that the protections of the ICD can only be triggered after a detainer is filed. It reasons, therefore, that because there was no proof of a detainer being filed before March, 1988, the defendant's August, 1987, request for final disposition was without legal effect to start the running of the 180 day time limit.

The state's argument ignores both the law of what constitutes a detainer and the state of the record. In *State v. Moore*, 774 S.W.2d 590 (Tenn.1989), our Supreme Court held "that a warrant of arrest can trigger the provisions of the Interstate Compact." *Id.* at 597. Also, it noted that the ICD did not define "detainer," but it quoted from other jurisdictions to the effect that a detainer is simply a notice filed with the prisoner's institution reflecting that the prisoner is wanted to face charges elsewhere with the institution being requested to hold the prisoner for the filing agency or to notify the agency before the prisoner's release. *Id.* at 596–597.

In this case, Ms. Hill testified that notice had been sent to Kentucky and that the "charging instruments" had been sent before the defendant was convicted in Kentucky. Likewise, the fact that the defendant's request for final disposition in Williamson County contained a case number for reference belies the state's claim.

---

**4.** At the Sumner County hearing, Ms. Hill testified that a representative of the federal government was present at the meeting, as well. Also, she said that it was agreed that the defendant

would be sent back to Kentucky before the various counties would send requests to Kentucky.

There is sufficient proof in the record to conclude that an appropriate detainer was lodged with the Kentucky authorities so as to allow the ICD time requirements to be triggered by the defendant's request.

■ The state also contends that the defendant's request is effective only when an inmate is convicted and placed in the custody of the sending state's correctional agency, noting that the defendant executed his request in the Trigg County Jail and not in a department of correction facility. The state cites federal cases which provide that the compact is ineffective when a defendant is merely in jail awaiting trial.

We distinguish pretrial detainees from those persons in jail who have been convicted and sentenced. In *Felix v. United States*, 508 A.2d 101 (D.C.App.1986), the Court, in holding that a prisoner can invoke the ICD although in a local jail, stated that "once a person has been convicted, sentenced, and has begun serving that sentence in the sending jurisdiction, that person's status is distinguishable for purposes of invoking the Act's protections from that of a pretrial detainee." *Id.* at 106. The Court reasoned that such a rule is easily applied and avoids encouraging a sending state to extend the period of confinement in a temporary facility. We adopt the rule in *Felix*.

We recognize that in *Crooker v. United States*, 814 F.2d 75 (1st Cir.1987) the First Circuit declined to follow *Felix* because it narrowly viewed language in Article III(a) as to the person having "entered upon a term of imprisonment in a penal or correctional institution" as meaning when the person has reached "the correctional facility to commence service." 814 F.2d at 77. It stated that a detainer cannot interrupt rehabilitative programs which have not begun. However, given the remedial nature of the ICD and the liberal construction given it in Tennessee, we do not interpret the statutory language so narrowly. The physical location of the prisoner should not control the ICD's application.

■ If a prisoner is under custodial authority by virtue of serving a term of imprisonment, the fact he is awaiting transfer from one facility to another is of no consequence to the operation of the ICD. The rule in *Felix* is the better approach and is more easily applied.

Tennessee's sentencing provisions are a prime example of why *Felix* makes more sense. We allow for sentences to the Department of Correction, local jails or local workhouses. The governor can order the delay in prisoners being transferred from a local jail to a Department of Correction facility. T.C.A. § 41-1-506. Many rehabilitative programs might apply to these prisoners being held in local jails awaiting transfer. T.C.A. § 41-1-510. A detainer's impact upon a prisoner awaiting transfer to another facility is no less destructive of the purposes of rehabilitation if it delays implementation of programs instead of interrupting them.

In any event, it is hard to apply the reasoning in *Crooker v. United States, supra,* to the facts of this case. The documents received by the Williamson County authorities included Kentucky's offer of temporary custody and noted that the custodial authority was the "Trigg County Jail for Kentucky Corrections Cabinet, Cadiz, Kentucky." The documents reflect that the defendant was being held under the authority of the Kentucky corrections agency, but in the local jail. *Crooker* would suggest that Tennessee authorities could either investigate the "correctional institution" status of the Trigg County Jail or ignore the defendant's request for final disposition and Kentucky's offer of temporary custody. Neither alternative is necessary under *Felix*.

Thus, the 180 day time period under the ICD began to run when the Williamson County prosecutor and Circuit Court had received the defendant's request for final disposition. The record reflects that the time began on September 9, 1987, the first date that both the prosecutor and the Circuit Court had received the documents.

■ Next the state contends that the 180 day time provision in Article III had not expired because of various activity which tolled its running. We note that the

burden is on the state to show compliance with the ICD time requirements, including a showing that the requirements were not met because the defendant was unable to stand trial. *Nelms v. State, supra,* 532 S.W.2d at 927. In this regard, the state argues that the defendant was unable to stand trial while he was in federal custody and that, upon his return to Kentucky, his seeking court protection against his return to Tennessee rendered him unable to stand trial.

The evidence reflects that the defendant was in temporary federal custody pending trial and sentencing from the date Williamson County received his request September 9, 1987, until his return to Kentucky on March 22, 1988. The state contends that such federal custody would automatically make the defendant unable to stand trial which would toll the time under Article VI. It cites and quotes from *State v. Ronnie DeWayne Graham,* No. 754, Sullivan Co., 1987 WL 18384 (Tenn.Crim.App., Knoxville, Oct. 14, 1987) in stating that "this Court has said the ICD does not apply where a defendant is 'awaiting trial of federal charges.'" *Graham* does not contain such a blanket statement. In *Graham,* the Court was dealing with a prisoner who made his ICD request when he was in federal custody in Virginia awaiting trial on federal charges. All the Court held in *Graham* was that the ICD does not apply to persons who are in custody awaiting final disposition of charges pending in the custodial or sending jurisdiction. *See United States v. Roberts,* 548 F.2d 665 (6th Cir.1977). The holding in *Graham* is based upon the fact that the ICD only applies when the person "has entered upon a term of imprisonment," *see* Articles III(a), IV(a). This particular language in the ICD inherently excludes its application to persons who are pretrial detainees in the *sending* state.

■ In *State v. Moore, supra,* our Supreme Court referred to cases from other jurisdictions holding "that the phrase 'unable to stand trial' in Article VI(a) includes a situation where a prisoner is lodged in a *state or federal facility other than in the sending or receiving state."* 774 S.W.2d at 597 (emphasis added). Obviously, the defendant was in the temporary custody of the federal authorities in Tennessee and was lodged in a facility in Tennessee. However, under the ICD, the middle federal district in Tennessee is not the same "state" as Tennessee. In *United States v. Bryant,* 612 F.2d 806 (4th Cir.1979), *cert. denied,* 446 U.S. 920, 100 S.Ct. 1855, 64 L.Ed.2d 274 (1980), the Fourth Circuit held that a federal district constitutes a separate "state" for ICD purposes, at least when the district is dealing with an actual state under the Act. It concluded that there was a "working assumption clearly built into the Act that a receiving state as a jurisdictional unit will have a routine method of monitoring under centralized control the arrival of out-of-state prisoners for trial on particular charges anywhere within the jurisdictional unit defined as 'state.'" *Id.* at 810.

■ Thus, even though the defendant was physically within the state of Tennessee, he was within the temporary custody of, and pending trial in, the *federal* district jurisdiction. Under *Bryant,* such a custodial relationship is no different than if the defendant were in the temporary custody of another state, such as, Illinois. Relative to jurisdiction under the ICD, the state of Tennessee and the middle federal district of Tennessee are not the same receiving "state." Thus, absent evidence to the contrary, a person in the temporary custody of federal authorities pending trial on federal charges may be viewed as unable to stand trial for state charges even though the federal jurisdiction is located in the same state.

In this case, we note that some evidence exists to indicate that the defendant might have been available to Williamson County even though he was in federal custody. The defendant's request to Williamson County, effective September 9, 1987, specifically notified the Williamson County authorities that detainers from three other counties, Alabama, and the middle federal district of Tennessee were pending and the request provided the names and addresses

for the prosecutors and court clerks in those jurisdictions. Likewise, Kentucky's offer to deliver temporary custody of the defendant to Williamson County, which was sent with the defendant's request, stated the following as to the three Tennessee counties and the Tennessee federal district:

> Indictments, informations or complaints charging the following offenses also are pending against the inmate in your state and you are hereby authorized to transfer the inmate to custody of appropriate authorities in these jurisdictions for the purposes of disposing of these indictments, informations or complaints.

Apparently, Kentucky was providing authorization to jurisdictions within the geographic confines of Tennessee to transfer the defendant among themselves to resolve all pending cases, including the one in the federal district.[5]

If the federal authorities had obtained temporary custody of the defendant through a similar offer from Kentucky, there would be full authorization for Williamson County to obtain the defendant from the federal authorities. Under such circumstances, if the state were aware of the authorization it might be incumbent upon it to prove *factually* that the defendant was unable to stand trial, given the fact that Williamson County is within the middle federal district. *See, e.g., Young v. Mabry,* 596 F.2d 339 (8th Cir.1979). However, since the record does not contain any documents or other evidence to show how the federal authorities obtained the defendant's temporary custody, we do not base our holding upon a conclusion that such authorization was given to the federal authorities. Thus, under the record in this case, we conclude that the defendant was unable to stand trial in Williamson County through the time the defendant was sentenced in federal court on March 22, 1988.

Even crediting the state's claim that the defendant was unable to stand trial while he was in federal custody, the state must still show that he was unable to stand trial for sufficient periods of time after his return to Kentucky in order to toll the running of the 180 day time period before he was returned to Williamson County. Obviously, he was unable to stand trial after his escape on June 8, 1989, which event would have voided his request for final disposition under Article III(f).

Beginning March 22, 1988, the defendant was in Kentucky. The time period for Williamson County to try the defendant would have run from such date until September 18, 1988. The state contends that the defendant's seeking the protection of the Kentucky courts against his return tolled the time, but the evidence reflects that the defendant's petition for writ of habeas corpus was not filed until October 26, 1988.[6] In fact, there is nothing in the record showing that Williamson County authorities, specifically, ever attempted to obtain temporary custody of the defendant after the Kentucky offer for temporary custody was received by them on September 9, 1987.

■ Also, we do not view the defendant's attempt to get the Kentucky governor to intercede in June, 1988, relative to the Putnam County charges as a block or a hurdle to the Williamson County case. In fact, the procedure used by the defendant was only provided for in Article IV of the ICD, not Article III. The distinction between the two articles is described in *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981) as follows:

> Article III of the Agreement provides the prisoner-initiated procedure.... If the prisoner initiates the transfer by demanding disposition (which the Agreement automatically extends to *all* pending charges in the receiving State), the authorities in the receiving State must bring him to trial within 180 days or the

---

5. This conclusion is supported by the fact that a similar authorization was in the offer which Kentucky sent to the Sumner County authorities.

6. The thrust of the defendant's petition was that the prison authorities should be required to remove the Tennessee detainers because of the Tennessee counties' failure to comply with the time requirements of the ICD.

charges will be dismissed with prejudice, absent good cause shown.

Article IV of the Agreement provides the procedure by which the prosecutor in the receiving State may initiate the transfer. First, the prosecutor must file with the authorities in the sending State written notice of the custody request, approved by a court having jurisdiction to hear the underlying charges. For the next 30 days, the prisoner and prosecutor must wait while the Governor of the sending State, on his own motion or that of the prisoner, decides whether to disapprove the request. If the Governor does not disapprove, the prisoner is transferred to the temporary custody of the receiving State where he must be brought to trial on the charges underlying the detainer within 120 days of his arrival. Again, if the prisoner is not brought to trial within the time period, the charges will be dismissed with prejudice, absent good cause shown.

449 U.S. at 442–446, 101 S.Ct. at 709–710 (footnote omitted). Thus, the governor's approval is irrelevant to the receiving state's right to take temporary custody of the prisoner under Article III.

The defendant's attempt to invoke the governor's intervention, as provided in Article IV, on Putnam County's request for temporary custody, apparently made under Article IV, does not constitute sufficient proof that the defendant was unable to stand trial in Williamson County within 180 days of his Article III request for final disposition. Absent any evidence that the defendant's petition to the Kentucky governor resulted in Kentucky revoking its offer of temporary custody to Williamson County or otherwise actually prohibited such a transfer, the petition did not operate to toll the running of the 180 day time period.[7] Likewise, the record is insufficient for us to conclude that the defendant revoked his

Article III request for final disposition. Therefore, the state was obligated to bring the defendant to trial on the Williamson County case by September 18, 1988, and its failure to do so entitled the defendant under the ICD to a dismissal of the case with prejudice.

■ Relative to the state's final two contentions that the escape voided the state's obligations under the ICD and that the defendant's return from Florida was by extradition, not pursuant to the ICD, we hold that they are without merit. As previously discussed in the Sumner County case, the defendant was entitled to a dismissal of the Williamson County charge when the state failed to bring him to trial by September 18, 1988. The ICD requires that such a dismissal be with prejudice. The unexcused delay in this case which made further prosecution untimely was not occasioned by the defendant and his escaping approximately nine months after he was entitled to dismissal of the Williamson County charge was irrelevant. Further, the fact that Tennessee obtained the custody of the defendant from Florida through extradition does not negate the defendant's accrued rights under the ICD. *See Cuyler v. Adams, supra.* The Williamson County presentment was properly dismissed.

The judgments of the Sumner County and Williamson County trial courts are affirmed.

PEAY, J., and JOE G. RILEY, Special Judge.

---

**7.** Even if we viewed the defendant's request to the governor as effective in this case, Article IV specifically provides that the prisoner's return would be delayed only by 30 days. A 30 day toll would have required Williamson County to bring the defendant to trial by October 18, 1988, which it failed to do.