IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2012

## STATE OF TENNESSEE V. DELAVAN BENIAMIN MOHAMMED

**Appeal from the Davidson County Criminal Court
No. 2010-D-3376     Steve Dozier, Judge**

_____

**No. M2011-02552-CCA-R3-CD     Filed - 05/03/2013**

_____

Defendant, Delevan Beniamin Mohammed, pled guilty to possession of more than three hundred grams of cocaine with intent to sell in a drug free school zone, with an agreed sentence of 25 years as a Range II offender, with the trial court to determine manner of service of the sentence. The trial court ordered Defendant's sentence to be served in the Department of Correction. On appeal, Defendant contends the trial court erred by denying him an alternative sentence. We conclude the trial court did not abuse its discretion in sentencing Defendant. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Erik Herbert, Nashville, Tennessee, for the appellant, Delavan Beniamin Mohammed.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I.  Background

_Guilty Plea_

According to the State's recitation of the facts at the guilty plea submission hearing:

[T]he State's proof would be that this investigation began in part with a confidential informant making a purchase from defendant who was known as D'Low. The confidential informant first went to this purchase on January 22 of 2010 to the defendant's home at 420 Cathy Joe Circle here in Davidson County. On that first encounter, the confidential informant gave the defendant, who he knew as D'Low, $3,160 of buy money. The defendant gave him in exchange three bags of white substance that was sent to the TBI laboratory.

A few days later on January 27, 2010, the confidential informant w[ent] to the defendant's home at 420 Cathy Joe Circle, and this time, paid the defendant $4,725 of buy money and was [g]iven in exchange five bags of a white substance that was submitted to the TBI laboratory. The defendant was-identified the defendant [*sic*] Delavan Mohammed from a mug shot and stated that he was D'low, the individual that he had these encounters with.

The TBI laboratory tested those bags and found it to be 119.2 grams in one of the sales and 81.7 grams in the other sale.

These probable cause buys lead the detectives to seek a search warrant to be executed at the home of 420 Cathy Joe Circle. This was done on February 1st of 2010. The detectives had used the confidential informant to once again set up a deal so they could purchase the cocaine from the defendant at the home. At this particular time, however, instead of completing the purchase, they executed the search warrant. When they did so, the defendant was at home. Inside the home was found a unloaded .22 caliber pistol, loose marijuana, a plastic bag with marijuana, a box of plastic baggies, some pills, digital scales, a bag of white powder that was in the defendant's left pants pocket. Torn Ziploc bags, rolling papers, nine bags of white power that were approximately 9 ounces [*sic*] each. [$2,265] in cash was found with $1,295 of that being in the defendant's pocket. There was an additional 3 ounces of cocaine found in the kitchen. Two additional large scales were found in the living room under the couch. All of these items were submitted to the TBI crime laboratory and on this particular search warrant execution, the amount of cocaine was found to be 327.7 grams[.] There was an additional 9.2 grams as well.

*Sentencing Hearing*

Detective Joseph Simonik, assigned to the 20th Judicial District Drug Task Force, testified that although he was not involved in the investigation of Defendant's case, he had previously encountered Defendant in the course of another cocaine investigation. Detective

Simonik testified that in May 2007, while assigned to Metro Nashville Police Department's crime suppression unit, he arranged for a confidential informant ("CI") to purchase a kilogram of cocaine. While conducting surveillance, Detective Simonik observed Defendant and a "Mr. Habeeb" arrive at the location of the planned drug deal. Detective Simonik testified Defendant got out of the car and walked into a bar. Thereafter, a "Mr. Rahjeeb" exited the bar to complete a cocaine transaction with the CI. Detective Simonik testified Mr. Habeeb and Mr. Rahjeeb were arrested and that a kilogram of cocaine and $86,000 were recovered at the scene. Detective Simonik testified he interviewed Defendant who told him that Mr. Habeeb had given him a ride to the bar. Additionally, Detective Simonik testified Defendant was aware of the drug transaction.

On cross-examination, Detective Simonik testified that the cocaine and money were inside of the car and that Mr. Habeeb was arrested before any transaction took place. Detective Simonik testified that Mr. Habeeb transported the cocaine to Tennessee from Texas. Additionally, Detective Simonik testified that Defendant was in the bar during the planned buy. When questioned by the trial court, Detective Simonik testified that after the investigation, Defendant was not arrested for, charged with, or prosecuted for any crime. However, Defendant was fully aware he "almost got caught up" in the middle of a large scale cocaine deal.

During the sentencing hearing, Detective David Goodwin of the Metro Nashville Police Department testified that he conducted an undercover buy investigation at 420 Cathy Joe Circle in January 2010. Detective Goodwin testified that he utilized a CI to investigate cocaine sales at the address. Detective Goodwin testified that over the course of the investigation, the CI purchased cocaine twice from a person known as "D'Lo." Detective Goodwin testified that these controlled purchases yielded three ounces and four and a half ounces of cocaine respectively. At the sentencing hearing, Detective Goodwin identified Defendant as "D'Lo." Additionally, Detective Goodwin testified that the CI identified Defendant through the use of a mug shot.

Detective Goodwin testified that based upon these controlled purchases, he obtained a search warrant for 420 Cathy Joe Circle. Detective Goodwin testified that before the warrant was executed, the CI arranged to purchase nine ounces of cocaine from Defendant and that the warrant was executed before the transaction occurred. Upon execution of the search warrant, police found a .22 caliber pistol laying beside a "Mr. Meshow" in the living room where Defendant was at the time of the search. Defendant admitted that the pistol belonged to him, and it was found by a coffee table where loose marijuana, plastic bags, and digital scales were located. Nine ounces of cocaine were found in Defendant's bedroom, three ounces of cocaine were found in the kitchen, and a small bag of marijuana was found in another bedroom. Cocaine and $1291 were found on Defendant's person as well.

On cross-examination, Detective Goodwin testified that the pistol found during the search was unloaded at the time, and no .22-caliber rounds were found at the residence. Detective Goodwin testified that Defendant was cooperative and compliant during the search and at the time of his arrest.

Sekvan Mohammed, Defendant's older brother, testified that he and Defendant were born in and spent their childhood growing up in Northern Iraq. Defendant's family is Kurdish. While testifying, Sekvan explained the hardships of Defendant's youth. Sekvan testified that Defendant, at the age of six, had been severely injured and spent significant amounts of time hospitalized. Sekvan testified Defendant's family was "gassed by Saddam Hussein" and that he and Defendant grew up during the Iran-Iraq war. Sekvan testified that half of Defendant's family immigrated to the United States in 1990 while he and Defendant did so in 1992. Sekvan testified Defendant was unable to work due to the injuries and diseases of his childhood but that Defendant was capable of walking with the use of crutches. He additionally testified that Defendant dropped out of high school after completing the ninth grade.

While testifying, Sekvan described a close relationship with Defendant. Sekvan testified he was deployed overseas with the Department of Defense when Defendant committed the offense which is the subject of this appeal. He testified that he owned the residence where Defendant had been arrested. Sekvan testified that while he was deployed overseas, Defendant had helped him and his wife take care of their children. He also testified that he was unaware of the severity of Defendant's offense until he returned to the United States. Sekvan further testified that he had no idea Defendant had been selling drugs and that both he and his family were ashamed of Defendant's involvement in drug sales. He testified that he did not believe Defendant would commit criminal acts or get involved with drugs again if Defendant was granted an alternative sentence. Sekvan testified that he believed Defendant had learned his lesson and that he and his family had a plan to present to the court in the event the court granted an alternative sentence. Sekvan testified this plan included Defendant attending classes to obtain a high school diploma and undergoing physical therapy. Essentially, Defendant's older brother testified that Defendant would have housing, transportation, and family support if the trial court granted an alternative sentence.

## II.     Analysis

On appeal, Defendant contends the trial court erred by denying him an alternative sentence and by sentencing him to a period of continuous confinement. The State responds that Defendant failed to timely appeal his sentence and that it should be dismissed. Alternately, the State argues that the trial court's sentence was proper in light of its finding that confinement was necessary to avoid depreciating the seriousness of Defendant's offense.

-4-

*A. Timeliness of Appeal*

The State contends that Defendant's notice of appeal was untimely filed with the trial court. On October 11, 2011, Defendant filed a document entitled "Motion to Reconsider" with the trial court. The motion alleged deficiencies in the trial court's sentencing order and was heard on November 4, 2011. At the hearing, Defendant's counsel stressed Defendant's paraplegia to the trial court and urged the court to reconsider the manner in which Defendant's sentence was to be served in light of Defendant's preexisting medical conditions. Four days later on November 8, 2011, the trial court filed an order denying Defendant's "Motion to Reconsider," which re-affirmed its original sentencing order.

On November 23, 2011, Defendant filed a Notice of Appeal, specifically stating his intent to appeal the sentencing order denying his request for alternative sentencing. The State notes that on September 15, 2011, the Davidson Criminal Court entered a written order which denied alternative sentencing and ordered Defendant's sentence to be served in the Department of Correction. The State argues that Defendant's "Motion to Reconsider" filed on October 11, 2011, heard by the trial court on November 4, 2011, and denied by the trial court on November 8, 2011, did nothing to toll the 30 days in which to file an appeal after a judgment is entered pursuant to Tennessee Rule of Appellate Procedure 4. Consequently, the State argues that Defendant untimely filed his notice of appeal on November 23, 2011, and that this appeal should be dismissed.

Tennessee Rule of Appellate Procedure 4 states in pertinent part:

[i]n an appeal as of right to the Supreme Court, Court of Appeals or Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the filing of such document may be waived in the interest of justice. The appropriate appellate court shall be the court that determines whether such a waiver is in the interest of justice. Any party may serve notice of entry of an appealable judgment in the manner provided in Rule 20 for the service of papers.

[i]n a criminal action, if a timely motion or petition under the Tennessee Rules of Criminal Procedure is filed in the trial court by the defendant: (1) under Rule 29(c) for a judgment of acquittal; (2) under Rule 32(a) for a suspended sentence; (3) under Rule 32(f) for withdrawal of a plea of guilty; (4) under Rule 33(a) for a new trial; or (5) under Rule 34 for arrest of judgment, the time

for appeal for all parties shall run from entry of the order denying a new trial or granting or denying any other such motion or petition.

Tenn. R. App. P. 4(a), (c).

In *State v. Biggs*, this court considered an appeal in which the defendant had entered a guilty plea and subsequently applied for probation. *State v. Biggs*, 769 S.W.2d 506 (Tenn. Crim. App. 1988). In that case, the State argued that the defendant's motion to reconsider a denial of probation was not tantamount to a request to reduce a sentence. *Id*. at 509. A motion to reconsider is not recognized by the Tennessee Rules of Criminal Procedure. *State v. Turco*, 108 S.W.3d 244, 245 n. 2 (Tenn. 2003). Therefore, it does not toll the time for filing a notice of appeal. *State v. Lock*, 839 S.W.2d 436, 440 (Tenn. Crim. App. 1992).

This court in *Biggs* reached the conclusion that a motion for reconsideration of probation was in effect a request for a reduction of sentence under Tennessee Rule of Criminal Procedure 35. *Biggs*, 769 S.W.2d. at 509. In the present case, Defendant's motion was entitled "Motion to Reconsider," and the Davidson Criminal Court issued an order denying it as such. Defendant's motion, filed on October 11, 2011, was Defendant's formal petition to the trial court to modify the manner by which his sentence was to be served. For all intents and purposes, Defendant's motion was a Rule 35 motion to reduce his sentence. In harmony with *Biggs*, we conclude that the "Motion to Reconsider" alternative sentencing was in effect a Rule 35 request for a reduction of sentence, although not characterized as such by Defendant at the time it was filed or heard by the trial court. Contrary to the State's assertion, the trial court retained jurisdiction to hear and rule upon Defendant's motion. *See* Tenn. R. Crim. P. 35. Obviously, the appellate rules do not specifically allow a Rule 35 motion to suspend the running of the appeal time from the entry of the judgment. *See* Tenn. R. App. P. 4(c). Tennessee Rule of Appellate Procedure 4(c) mentions the motions which toll the time and such specificity would indicate that all other motions are excluded. *See State v. Bilbrey*, 816 S.W. 2d 71, 75 (Tenn. Crim. App. 1991). Thus, the filing of the Rule 35 motion did not toll the time within which to appeal from the original judgment. *Id*. However, given the facts, circumstances, and posture of the present appeal, this court exercises its authority and waives the timely filing of the notice of appeal. Tenn. R. App. P. 4(a).

### B. Sentencing

Defendant contends that he was statutorily eligible to be sentenced to alternative or split confinement under the Community Corrections Act and that the trial court erred by sentencing him to serve his entire sentence in the Department of Correction. A criminal defendant may appeal the length, range, or manner of service of a sentence. Tenn. Code

Ann. § 40-35-401(a). The appeal may be based on the contention that the sentence is not imposed in accordance with the Sentencing Act; that the sentence is excessive under Tennessee Code Annotated sections 40-35-103 and -210; or that the sentence is inconsistent with the purposes of sentencing set out in Tennessee Code Annotated sections 40-35-102 and 40-35-103. Tenn. Code Ann. § 40-35-401(b).

As interpreted by the Tennessee Supreme Court, sentences imposed by a trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a "presumption of reasonableness." *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This standard of review extends to alternative sentences. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) ("[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence."). When the trial court follows the statutory sentencing procedure and gives due consideration to the factors and principles relevant to sentencing, this court may not disturb the sentence. *See State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008).

In determining "the specific sentence and the appropriate combination of sentencing alternatives," the trial court must consider: (1) the evidence at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code. Ann. § 40-35-210(b).

On appeal, Defendant argues that he should have received an alternative sentence for his crime because he lacks a criminal history, and he holds potential for rehabilitation. The trial court considered these attributes when sentencing Defendant. The trial court noted that Defendant was eligible for alternative sentencing pursuant to Tenn. Code Ann. § 40-36-106; however, since Defendant pled guilty to a Class A felony, he was not presumed a favorable candidate for alternative sentencing. The trial court found that substantial quantities of cocaine and marijuana were recovered from Defendant and that the evidence before it demonstrated Defendant was operating a drug business. Additionally, the trial court found Defendant was aware of the illegality and potential consequences of his offense but chose to engage in the sale of large quantities of cocaine. Ultimately, the trial court found that an alternative sentence in Defendant's instance would depreciate the seriousness of his crime. Such a determination was within the discretion of the trial court. Tenn. Code. Ann. §

40-35-103(1)(B) announces that confinement may be necessary in certain situations to avoid depreciating the nature of an offense. *See* Tenn. Code Ann. § 40-35-103(1)(B). In light of *Bise* and *Caudle*, we question the continued validity of the proposition that exclusive reliance upon this factor requires that the circumstances of the offense "as committed, be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." *See State v. Bottoms*, 87 S.W.3d 95, 103 (Tenn. Crim. App. 2001) (quoting *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)). Even if the test remains the same, this case certainly justifies application of the "depreciating the seriousness of the offense" factor.

Defendant was dangerously close to being caught up in a cocaine offense involving one kilo of cocaine and approximately $86,000 three years prior to his arrest in the case *sub judice*. It can be readily inferred from the proof that he was involved in that earlier transaction, yet escaped prosecution and continued to be a large scale seller of cocaine. In the alternative, it can be inferred that although totally innocent of any involvement in the 2007 distribution of one kilo of cocaine, Defendant observed what he believed was an opportunity to reap large profits from the illegal sales of cocaine and began his own distribution scheme. Defendant first sold three ounces of cocaine to the CI and followed that up five days later with the sale of four and one-half ounces of cocaine. Five days after that, Defendant was scheduled to sell nine ounces of cocaine to the CI when the search warrant was executed. Defendant steadily increased the amount of cocaine for sale in a period of ten days. This meets the test of an offender who commits a criminal act in an "excessive or exaggerated degree."

In any event, being sentenced to community corrections is not an entitlement. *State v. Grigsby*, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997) ("The Community Corrections Act was never intended as a vehicle through which offenders could escape incarceration."). The Community Corrections Act was meant to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders[.]" Tenn. Code Ann. § 40–36–103(1) (2006); *see also State v. Samuels,* 44 S.W.3d 489, 492 (Tenn. 2001). Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

(F) Persons who do not demonstrate a pattern of committing violent offenses.

Tenn. Code Ann. § 40-36-106(a)(1)(A)-(F) (2006). However, persons who are sentenced to incarceration or who are on escape at the time of consideration will not be eligible, even if they meet these criteria. *See* Tenn. Code Ann. § 40-36-106(a)(2) (2006).

Even though an offender meets the minimum requirements for eligibility, he or she is not automatically entitled to participation in a community corrections program. *See State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the Act provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. *See* Tenn. Code Ann. § 40-36-106(d) (2006).

We cannot say that the trial court abused its discretion by ordering Defendant's sentence be served in the Department of Correction. The Davidson Criminal Court followed statutory sentencing procedures and gave due consideration to the factors and principles relevant to sentencing Defendant. The trial court properly considered the purposes and principles of the Sentencing Act. The manner in which the trial court ordered Defendant to serve his sentence was proper and fully accords with statutory law. Accordingly, Defendant is not entitled to relief.

## CONCLUSION

Based on our review of the record and applicable case law, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE