STATE of Tennessee, Appellee,

v.

Gary CAMPBELL and Charles Andrews, Appellants.

Court of Criminal Appeals of Tennessee, at Nashville.

April 15, 1986.

Permission to Appeal Denied by Supreme Court Aug. 11, 1986.

W.J. Michael Cody, Atty. Gen. & Reporter, Kevin Steiling, Asst. Atty. Gen., Nashville, Maurine A. Carroll, Asst. Dist. Atty., Franklin, for appellee.

R. Price Nimmo, Nashville, for Campbell.

E. Covington Johnston, Jr., Franklin, for Andrews.

## OPINION

O'BRIEN, Justice.

Defendants were each indicted and convicted in Williamson County on two counts of first degree burglary while in possession of a firearm and two counts of grand larceny. Campbell was sentenced to fifteen (15) years on each burglary count and ten (10) years for each larceny conviction all to be served consecutively. Andrews received sentences of ten (10) years on each count of burglary and three (3) years on each count of larceny, all to be served concurrently.

Several joint complaints of trial error are made, others are raised individually. They each protest in different terms that the evidence was insufficient to support the verdict. The State produced evidence to show that in the early morning hours of October 24, 1983 two separate dwellings in the same neighborhood of Brentwood, Williamson County, were burglarized. In the first, various articles, including two fur jackets, an antique shotgun, and some cash was taken. The total value exceeded $1,000. At the second residence the burglar, or burglars awakened a female member of the household sometime after 05:00 a.m. When she turned on a light she heard someone running from her kitchen into the garage. Subsequent investigation revealed that several articles of clothing, some money and credit cards, had been taken. Two guns, taken from the house, were found in the garage. The value of the property, including the guns, was fixed at between $500 and $1,000. A day or two later a gun stolen in the first burglary was sold by Andrews to a Nashville police officer. More of the stolen property was found in an apartment where the two defendants resided. A statement by Campbell led to the recovery of a television video game set. Both defendants, when interviewed by police officers, admitted their complicity in the burglaries.

Each of the defendants argue strenuously they cannot be convicted of burglary while in possession of a firearm. We find this issue to be without merit.

In *Walker v. State*, 606 S.W.2d 531, 533 (Tenn.1980), while assessing the case from another aspect the court made this observation:

"The punishment of the burglar is enhanced if he had in his possession a firearm 'at the time of the breaking and entering'. This does not mean that possession of a firearm after the actual physical break-in and entry has occurred does not call for enhancement; 'breaking and entering' is but another way of saying 'burglary'; the words refer to the offense of burglary in its entirety. See

*Key v. State*, 563 S.W.2d 184 (1978). Possession of a firearm by the burglar at any time during the commission of the offense is sufficient to enhance the punishment."

In *State v. Taylor*, 661 S.W.2d 695, 698 (Tenn.Cr.App.1983); permission to appeal denied 10/24/83, this Court, citing *Walker*, supra, held:

"[A]ppellant was properly convicted of TCA § 39–3–403(b)(3) which provides enhanced punishment for those found to be in possession of a firearm at the time of breaking and entering a residence during the day. The evidence, accredited by the jury, shows that appellant obtained the pistol which he pointed at Officer Dickens from inside the burglarized dwelling. Our supreme court has held that breaking and entering in TCA 39–3–403(b)(3) means burglary and possession of a firearm by the burglar at any time during the commission of the offense is sufficient to enhance punishment.... The danger to human life from possession of a firearm which the enhancement provision was enacted to deter was present at appellant's confrontation with police...."

In *Key v. State*, 563 S.W.2d 184 (Tenn. 1978), our Supreme Court held that a defendant was not subject to enhanced punishment provisions of the armed burglary statute where an accomplice was armed and the defendant unarmed, in absence of proof that he knew his accomplice had a firearm in his possession. Those circumstances are not adaptable to the facts in this case. In *Key*, at p. 188, the court specifically said:

"We do not, however, hold that the possession contemplated by Sec. 39–901, T.C.A. [T.C.A. § 39–3–401], must be personal and exclusive to trigger the enhancement provision. The reasoning of Judge Dwyer in *Peters v. State*, 521 S.W.2d 233, 235 (Tenn.Cr.App.1974), is appropriate:

The law, as we understand it, does not require actual or physical possession of the drug. If that were the case it

would be a simple matter for participants in crimes of this type [drugs] to designate who was to have actual possession. The other parties would then be secure from culpability because of the fact that another was in actual possession. We think that possession means control.

The possession necessary to invoke the statutory enhancement may be actual or constructive; it may be exclusive or joint. Constructive or joint possession may occur only where the personally unarmed participant has the power and ability to exercise control over the firearm. Such possession may never exist absent knowledge that the other participant is in the possession of a firearm."

██ The evidence in this case clearly establishes that the defendants were jointly in personal and constructive possession of the weapons in each burglary involved, and each had the power and ability to exercise control over the firearms in question.

Both defendants insist the trial court erred in denying a motion to dismiss the indictment based on the premise that the State was estopped from proceeding against them by an earlier plea bargain agreement entered into in Davidson County.

The substance of the complaint is that on December 15, 1983, the defendants entered guilty pleas to first degree burglary in Davidson County. Campbell also entered a guilty plea to the offense of aggravated assault. The transcript of the guilty plea proceedings in the Davidson County Court is ambiguous but seems to convey that the agreement made by the District Attorney General, speaking as the State's representative, was to not proceed with any other cases they had knowledge of, including other cases which the metro police were prepared to pursue by the introduction of warrants. The agreement was stated in various ways. In one instance defense counsel stressed to the court that the plea agreement, in part, was that the District Attorney had agreed not to pursue any cases against Andrews about which he had any knowledge. It appears in Andrews case there may have been as many as twenty to thirty possible outstanding offenses. On his guilty plea he was to receive two six (6) year concurrent sentences. In the case of Campbell, on a guilty plea to first degree burglary he accepted a recommendation to receive thirteen (13) years, together with a recommended sentence of six (6) years on aggravated assault, to be served concurrently with a thirteen (13) year sentence recently assessed on a federal conviction. He too was to have several outstanding indictment counts and pending warrants retired on acceptance of his guilty plea by the Court. The District Attorney General specifically said, "the State has agreed not to pursue other charges of which the State currently has knowledge."

The argument of both defendants is that this agreement included all charges, not only those outstanding in Davidson County, but those which might be pending in Williamson County, or elsewhere.

There is no doubt metro police authorities knew about the investigations which were underway in Williamson County. More than a month before the guilty plea submission affidavits of complaint were filed in Williamson County, a preliminary hearing was held in that jurisdiction on January 25, 1984. These cases came to trial on October 8, 1984. A motion to dismiss the indictments was overruled on that date. The trial judge held that the District Attorney General in Davidson County did not have authority to dismiss charges in Williamson County.

Title 8, Chapter 7 of the Tennessee Code pertains to the duties and functions of the District Attorneys General. Among those things pertaining to this investigation T.C.A. § 8–7–103 provides:

DUTIES.—It shall be the duty of each district attorney general:

(1) To attend the circuit courts *in his district*, and every other court therein having criminal jurisdiction, and prosecute on behalf of the state in every case in which the state is a party, or in anywise interested; (Emphasis supplied)

■ The trial judge was correct in his ruling and we hold that the District Attorney General of Williamson County properly proceeded against the defendants by indictment for those offenses committed by them within that judicial district. If there was either a misunderstanding, or a misrepresentation during the course of the guilty plea submission in Davidson County Criminal Court defendants' remedies are there. They each had numerous outstanding charges retired as part of the plea agreement. They are not entitled to enjoy the benefits of their guilty plea submission if their plea was not knowingly and voluntarily submitted. Both they, and the District Attorney General, have a right to be heard on the issue in a forum with jurisdiction of the subject matter.

Defendant Campbell assesses error to denial of a motion to dismiss the indictment because his preliminary hearing in the General Sessions Court proceeded in the absence of his counsel, and despite his request for appointment of counsel.

On the day of the trial a series of defense motions was heard, including a motion to dismiss the indictment because Campbell was not represented by an attorney at his preliminary hearing, which was a critical stage of the criminal prosecution, and the failure of the court to provide him with counsel was detrimental to him. The motion was filed on July 7, 1984. The case came to trial on October 8, 1984. At the hearing on the motion Campbell testified he was represented on the date of the preliminary hearing by a Nashville attorney who failed to appear on his behalf. He had also failed to make an appearance at a previous setting. He testified he told the General Sessions Judge that he would like to get started so he could go ahead and serve his time and be done with it. The judge refused to appoint the public defender to represent him. Co-defendant's trial counsel was present at the preliminary hearing and cross-examined the State's witnesses. The State offered no evidence on the motion. The General Sessions Judge who held the preliminary hearing was apparently not available on the date of the trial when the

motion was heard. Rule 12 of the Rules of Criminal Procedure specifically requires that motions of this nature be disposed of prior to trial. There is no indication in this record why the matter was delayed until the morning of trial for hearing.

■ It is the law of this State that a preliminary hearing is not constitutionally required in a criminal prosecution, however, once granted, it is considered a critical stage of the proceedings and the State must provide competent counsel for an indigent defendant. *McKeldin v. State*, 516 S.W.2d 82, 86 (Tenn.1974). If defendant was denied the right to counsel in this case his constitutional rights were infringed. We are of the opinion he was not. The only evidence before us is that his retained counsel had failed to appear not on just one, but on two occasions when the preliminary hearing had been set. The right to counsel does not include the right to inhibit the orderly function of the court by counsel's failure to appear. We are not informed why the General Sessions Judge elected to proceed without Campbell's counsel being present. The record does show that he and his co-defendant, Andrews, appeared jointly before the General Sessions Court for their preliminary hearing. Trial counsel for Andrews was present and cross-examined the witnesses appearing for the State. There is no indication whether or not defense witnesses were called however the defenses of the two were not incompatible. There is no evidence that any defense right was lost or that Campbell waived any constitutional right of any nature, or that any advantage was gained by the State as the result of the hearing. On the record before us we are satisfied that he was not prejudiced by the action of the General Sessions Court in proceeding with the preliminary hearing in the absence of his attorney. Clearly, if it was error, it was harmless beyond a reasonable doubt. We cannot find from this record that there is a reasonable possibility this shortcoming contributed in any fashion to Campbell's conviction. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705

(1967). We affirm the action of the trial judge in denying the motion to dismiss the indictment.

Campbell contends error occurred in allowing into evidence the substance of a statement made by him but not made available to him for inspection in accordance with Tenn.R.Crim.P. 16(a)(1)(A). The gist of the issue is that, in the course of a conversation with Police Sergeant Dennis Birdwell, he gave him the name of a person who had possession of some of the property stolen in one of the burglaries. The "Intelevision" taken from the Burnett residence was recovered from this individual. Apparently the State was not privy to this information until the day of trial, and had not informed defense counsel of Campbell's comments to the police in response to a pretrial motion. Objection was made to Birdwell's testimony. The trial court recessed for the day in order to give defense counsel the opportunity to investigate the matter and prepare an appropriate defense.

■ Counsel has done an excellent job in presenting this issue, but under all the circumstances, there is no doubt the remedy selected by the trial judge was adequate and proper. The only question to be considered was whether the "Intelevision" set came from Andrews' apartment where Campbell was arrested, or if it was acquired by the police from some other source. As soon as the fact was made known to the State, defense counsel was informed and the Court allowed an opportunity to investigate the matter. Finally, it is debatable whether or not the information received by the police from Campbell could be considered the substance of an oral statement made by him in response to interrogations by a known law enforcement officer as contemplated in the rule. The police officer testified he and Campbell were engaged in a discussion, or conversation. He implied it might have been considered that he was questioning Campbell, but they were more or less just talking about where some of the property could be recovered. Campbell gave him the name of a person, who, when contacted, relin-

quished possession of some of the stolen items. We find the issue without merit.

Campbell also says the armed burglary charge placed them in double jeopardy when the facts required to prove the charge of larceny at the King home were identical to those required to prove armed burglary.

This issue too was brought about by vigorous and intensive defense tactics. The indictment in the case charged defendant with the larceny of one check, cash, driver's license, and coats all in the value of over $200 from the King residence. The State proved through the testimony of Mrs. King that a $50 traveler's check was taken, $10 or $12 in cash, her driver's license, and some credit cards, along with two leather coats which she valued at between $200 and $250 each. On cross-examination by Andrews' counsel about how she determined the value of the coats she testified she got the prices she had paid for them from the men's shop where they were purchased. Objection was made to what somebody might have told her. Mr. King placed a value of $235 on the two guns which were removed from the house and left in the King garage when the burglars were frightened off. This was all the testimony about the value of the King property. Defendants' analysis is erroneous and the issue must be overruled.

■ There is no question but that a defendant may be convicted of both burglary and larceny under the facts of this case. See *State v. Davis*, 613 S.W.2d 218, 221 (Tenn.1981). Burglary (T.C.A. § 39–3–401) and grand larceny (T.C.A. § 39–3–1103) are codified in distinct statutory provisions and are intended to protect different interests. The fact that a defendant is armed with the same weapon which he is accused of carrying away does not alter the fact that after proving either of these offenses, different and additional facts and elements must be shown to prove the other.

■ On the other hand, the indictment in this case does not charge defendants with the larceny of the weapons, therefore they

could not have been convicted of that offense. The record also clearly indicates that without objection on direct examination Mrs. King established the value of the two leather coats in question to be far in excess of $200. On cross-examination she endeavored to explain how she fixed their value. Objection was made to what somebody else told her. This was not followed up by defense counsel. No instruction to the jury to disregard the testimony was requested. At the time the motion for acquittal on the grand larceny charge was argued on the basis of the value of the property taken, the trial judge confessed he had some difficulty fixing that value. He apparently considered the value of the guns which were removed from the house to be over $200 and then summarily overruled all motions. In his instructions to the jury on grand and petit larceny he did not explain to the jurors what the measure of value was or how it was to be fixed, nor was he requested to do so. In *State v. Hamm,* 611 S.W.2d 826, 828 (Tenn.1981), the Court declared that in determining the value of stolen property in larceny cases, the trier of fact is to determine the fair cash market value of the stolen property at the time and place of the theft; neither the original value nor the replacement value of the stolen goods are recognized for that purpose, citing 3 Underhill, Criminal Evidence, § 603 at 1474 (5th Ed.Herrick 1957); 50 Am.Jur.2d Larceny § 159 (1970). If it is the duty of the prosecution to prove the statutory amount, and the obligation of the trier of fact to determine the fair cash market value of stolen property it is essential that legally cognizable means be established to enable them to accomplish their respective missions. In *John W. McDougall Company, Inc. v. Z.D. Atkins,* 301 S.W.2d 335, 337, 201 Tenn. 589 (1957), the Court in discussing the civil aspect of "fair market value" commented:

"An examination of texts and judicial utterances reveals the fact that the expression 'fair market value' has no invariable definition, but that its meaning varies with the circumstances surrounding a given object and situation to which it is sought to apply the term."

There has been very little said in more recent cases to explicate the definition. The most practical explanation we have found is in Volume 52A, C.J.S., Larceny, § 60(2), p. 489:

"If a thing is intrinsically valuable and its value, as a subject of larceny, is not otherwise regulated by statute, the measure of its value on a trial for larceny is its fair market value at the time and place where the crime is charged to have been committed, or, if there is no market value there, at a place which is near by and in a similar situation, or at a near-by place to which it was taken and where it was sold by the thief, for the uses and purposes which the thing was intended to serve and for which it is best adapted. If an article does not have a market value, its actual value must be determined from a consideration of all the facts and circumstances in evidence, including the testimony of witnesses who qualify themselves to testify as to its value. It may not be determined solely by its worth to the owner or its original cost; but it has been held that cost, together with other proof, may afford the basis for a valid finding as to value, and that replacement value may be determinative, where the property has no cash market value."

Utilizing this criteria we are of the opinion that the testimony of Mrs. King as to the value of the coats stolen from her residence was admissible to establish their fair market value. The objection in this case was made to her response when she was asked, on cross-examination, if she recalled how much she paid for the coats. The defense elicited this testimony. The jury reached a conclusion about the value of the stolen property based on the information they were allowed to hear. There is no doubt that their verdict was reasonable and proper with or without the additional evidence regarding the value of the weapons which were left in the King's carport. The issue is totally without merit.

Defendant Campbell says the court erred in imposing consecutive sentences in this case. The trial judge found him to be a persistent and aggravated offender as well as a professional criminal. In *Gray v. State*, 538 S.W.2d 391, 393 (Tenn.1976), the Court stated that the object of consecutive sentencing is to protect society from those who are unwilling to lead a productive life and resort to criminal activity in furtherance of their anti-societal lifestyle. This defendant has a lengthy and extensive criminal record which defense counsel attempted to mitigate by offering evidence that he became involved in the use of drugs at an early age, after the death of his father, and suggested he is developing the ability to become a contributing member of society. His record speaks to the contrary and we find no abuse of discretion in the trial court's judgment.

We have examined the argument of State's counsel complained of by defendant Andrews and find that it did not exceed the bounds of propriety and certainly did not effect the judgment in this case.

We affirm the judgment of the trial court.

DUNCAN, J., and SAM BOAZ, Special Judge, concur.