# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 12, 2015 Session

## BO W. PRENDERGAST v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Williamson County
### Nos. CR026267, CR057264    Timothy L. Easter, Judge

_____

### No. M2013-02869-CCA-R3-ECN – Filed December 29, 2015
_____

This case represents the consolidated appeals from the dismissal of the petitioner's coram nobis petition and post-conviction petition, both of which sought to overturn his 2011 conviction for theft of property valued at over $10,000 but less than $60,000. The procedural history of these cases is complicated by the fact that both attorneys, one in the coram nobis court and one in the post-conviction court, filed "motions to reconsider" purporting to delay the trial court's final disposition of each action. We reiterate that motions to reconsider are not authorized by the Rules of Criminal Procedure. Waiving the timely notice of appeal in the coram nobis action, we discern no error in the dismissal of the petition. We reach the merits of the petitioner's post-conviction case and affirm the denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Matthew J. Crigger (on appeal and at hearing in Case No. CR057264), Brentwood, Tennessee, and Drew Justice (at hearing in Case No. CR026267), Franklin, Tennessee, for the Appellant, Bo W. Prendergast.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Kim R. Helper, District Attorney General; and Mary Katharine White, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

A jury convicted the petitioner of the theft of a diamond ring from the victim, who had employed the petitioner as a carpenter. *State v. Bo W. Prendergast*, No. M2011-00571-CCA-R3-CD, 2012 WL 1071812, at *1 (Tenn. Crim. App. Mar. 28, 2012) *perm. app. denied* (Tenn. Sept. 18, 2012). The victim testified that the petitioner had worked for him over a period of months sometime prior to the discovery of the theft in May 2009 and that the petitioner knew of the ring and had access to the area where the combination and key to the safe containing the ring were kept. *Id.* at *1-2. The victim testified that he had paid $3,600 for the setting and $16,000 for the diamond stone. *Id.* at *4. The victim saw the defendant driving a blue truck sometime after the completion of the renovations for which the defendant was employed. *Id.* at *1. An appraisal from February 2005, valuing the ring at $21,175, was admitted into evidence through Brenda Peeler, who testified that the deceased owner of Hodges Jewelers had performed the appraisal and the store retained a copy as part of its business records. *Id.* at *2. Linda May Waller, the petitioner's landlady, testified that the petitioner had given her a ring in exchange for unpaid rent and utilities and toward the purchase of a blue pick-up truck belonging to Ms. Waller. *Id.* at *2. A few weeks later, she turned the ring over to police, suspecting it was stolen. *Id.* at *2. Ms. Waller was imprisoned at the time of trial and acknowledged a prior theft conviction. *Id.* at *2. She testified that the petitioner was renting a house from her at the time, although he had previously been a tenant in her trailer park, and she accepted the ring in lieu of some rent that the petitioner owed for the house. *Id.* Ms. Waller testified that the petitioner had lived in the house about six months when she gave the ring to the police. *Id.*

Kimberly Webber testified that she was acquainted with the petitioner and that he offered to sell her a ring for $2,000 in March 2009. *Id.* at *2. Bradley A. Knupp, who had been convicted of theft for stealing checks from the victim during the same renovation project, testified that he did not steal the victim's ring but had seen the petitioner with the key to the safe at one point. *Id.* at *2. The petitioner was also charged with the theft of a trailer from the victim, but the jury was unable to reach a verdict on the charge. *Id.* at *3.

The petitioner appealed the conviction, challenging the valuation of the ring and the trial court's decision not to allow trial counsel to introduce proof of Ms. Waller's felony drug convictions. *Id.* at *4-5. This court concluded that the evidence was sufficient to support the conviction. *Id.* at *4. The appellate opinion noted that the appraisal was admitted without objection, that the State was not required to perform an independent appraisal, and that the victim could base his testimony regarding the value of the ring on the appraisal. *Id.* at *4. This court next analyzed the trial court's refusal to

2

allow the felony drug convictions as impeachment under plain error analysis. *Id.* at *5. This court concluded that the trial court committed error in excluding the convictions but noted that trial counsel made no offer of proof regarding the nature of the convictions. *Id.* at *7. Ultimately, this court denied relief, concluding that consideration of the error was not necessary to do substantial justice. *Id.* at *7.

## Procedural History of Coram Nobis Petition

On February 15, 2012, while the direct appeal was pending in this court, the petitioner filed a petition for a writ of error coram nobis with the trial court. It appears that the petitioner did not ask for a stay of this court's proceedings pending the resolution of the petition. *See State v. Mixon*, 983 S.W.2d 661, 663 (Tenn. 1999). The petitioner alleged that he was entitled to a new trial because newly discovered evidence cast doubt on Ms. Waller's testimony. Specifically, the petition alleged that a witness named Chastity Osborne had come forward to reveal that she had seen Ms. Waller with a very large diamond ring which Ms. Waller indicated she intended to pawn out-of-state. The petitioner, who was also present, overheard the conversation, told the women that a real diamond would cut glass, and scratched the rearview mirror of a nearby truck with the ring. According to the petition, Ms. Osborne thought that the petitioner appeared surprised that the stone was genuine. The petition alleged that Ms. Osborne would testify that the petitioner was living at the trailer park when Ms. Waller had the ring. The petitioner argued that this evidence would contradict Ms. Waller's testimony that the petitioner had moved from the trailer park and into her rental house at the time he gave her the ring and that it would contradict her testimony that the ring was given in exchange for rent on the house. The petition also asserts that the petitioner was without fault in locating this evidence because he had "severe mental difficulties"[1] and could not remember that the conversation took place. The petitioner attached no affidavits to the petition.

On March 16, 2012, the State moved to dismiss the petition without a hearing. The State's grounds for dismissal were that the evidence was not "newly discovered" because the petitioner was present for the conversation and that the evidence was merely corroborative of evidence at trial and showed no material inconsistencies. On March 28, 2012, the petitioner's direct appeal was denied. On April 10, 2012, the petitioner filed an answer arguing that the new evidence was material and that the determination regarding whether he was without fault in failing to uncover the evidence due to "memory problems" was a question of fact that needed to be resolved in a hearing. The Tennessee

---

[1] The record does not reveal the nature of the petitioner's limitations, but he is incarcerated in a special needs facility.

3

Supreme Court denied permission to appeal on the direct appeal of the conviction on September 18, 2012. On June 17, 2013, over one year after the petitioner's answer to the State's motion to dismiss, the trial court filed an order dismissing the petition. The trial court's sole basis for dismissal was that the petition was not supported by affidavits.

On July 17, 2013, exactly thirty days after the order denying his petition, the petitioner filed a "Motion to Reconsider Summary Denial, and for Leave to Amend Petition." This motion relied on Tennessee Rules of Civil Procedure 59.01 and 59.04. The motion to reconsider noted that there was no authority that affidavits had to be filed at the same time as the petition. The motion acknowledged that the petitioner had been unable to obtain the affidavit of Ms. Osborne, who did not want to cooperate with the petitioner's counsel. However, the petitioner sought leave to amend the petition to include evidence from Carl Dotson, whose affidavit was attached. Mr. Dotson's affidavit alleged that he saw Ms. Waller with the ring, that she intended to get it appraised because she did not know if it was real, and that she asked Mr. Dotson not to tell anyone about it. Mr. Dotson's affidavit asserted that he saw the ring while the petitioner still resided at the trailer park. The motion also included counsel's affidavit regarding the unsuccessful efforts he had undertaken to locate Ms. Osborne and reciting that he did not learn about Mr. Dotson's evidence until December 2012.

On August 30, 2013, the coram nobis court granted the motion to reconsider, allowing the petitioner to file an amended petition and ordering it to be accompanied by supporting documentation. The petitioner filed an amended motion, relying mainly on the affidavit of Mr. Dotson, but also including a summary of a statement Ms. Osborne had made prior to the time she ceased cooperating with the petitioner. The coram nobis court held a hearing on the petitioner's claims.

At the hearing, Mr. Dotson testified consistently with his affidavit that he saw Ms. Waller in possession of a large ring between January and March 2009, that she intended to get it appraised, that this conversation occurred while the petitioner was not living in the rental house but in a trailer, and that the petitioner did not know about this evidence. He also testified that the petitioner did not have the blue truck supposedly exchanged for the ring. Mr. Dotson testified that Ms. Waller told him she got the ring from "Bo."

On November 22, 2013, the coram nobis court denied relief based on its determination that the evidence introduced was "immaterial." In its oral ruling, the court noted that it did not find the witness credible. A notice of appeal was filed on December 20, 2013.

4

## Procedural History of Post-Conviction Petition

After the denial of the direct appeal in the petitioner's case, the petitioner filed a timely post-conviction petition on May 1, 2013. The petitioner asserted that trial counsel was deficient for failing to challenge evidence introduced by the State to establish the value of the stolen property; that trial counsel was deficient in failing to provide legal authority on the admissibility of Ms. Waller's prior convictions and in failing to raise the issue in the motion for a new trial; that trial counsel was deficient in not objecting to Ms. Peeler's testimony; and that trial counsel was deficient in not establishing the chain of custody of the ring. Counsel was appointed and chose not to amend the petition. On October 18, 2013, the State moved to dismiss the petition, averring that the issue regarding the prior convictions was addressed on appeal as plain error; that the issue regarding the valuation of the property was likewise addressed on appeal under the sufficiency of the evidence analysis; that trial counsel successfully excluded Ms. Peeler's testimony; and that the chain of custody was not a cognizable claim. On November 18, 2013, the post-conviction court granted the motion to dismiss, concluding that the appellate court's plain error analysis regarding Ms. Waller's prior convictions precluded post-conviction relief. The post-conviction court also opined that the appellate court's rejection of the sufficiency argument regarding valuation constituted a prior determination of the valuation issue. The court likewise adopted the State's arguments on the other grounds raised.

On December 6, 2013, the petitioner filed a motion to reconsider. The petitioner noted that the prejudice inquiry employed in plain error review was not identical to the prejudice standard for post-conviction relief and that his valuation claim was not whether the evidence ultimately introduced at trial was sufficient to establish value but whether his trial counsel was deficient for allowing the evidence of value to come in without objection.

On December 17, 2013, twenty-nine days after the entry of the order dismissing the petition, petitioner's counsel, evidently anticipating that the post-conviction court would not rule on his motion to reconsider while it retained jurisdiction, filed a notice of appeal. Two days later, on December 19, 2013, the trial court entered an order granting the motion to reconsider and granting the petitioner a hearing. This order was entered after the petitioner filed his notice of appeal and thirty-one days after the judgment dismissing the petition.

The document which follows chronologically in the appellate record is an order from this court in Case No. M2013-02787-CCA-R3-PC, filed on January 10, 2014. This order notes that the matter "is before the Court upon the Appellant's motion to voluntarily dismiss this appeal." The order states that "the above-styled appeal is hereby

5

dismissed." The mandate accompanying the dismissal required that the cause "be remanded [to the trial court] for further proceedings and final determination therein." A review of the motion to voluntarily dismiss in Case No. M2013-02787-CCA-R3-PC, which was not included in this record,[2] reveals that the petitioner informed the court that there was "no longer an adverse decision from which to appeal" because the trial court had granted his motion to reconsider.

On remand, the post-conviction court held a hearing regarding the petitioner's claims. Petitioner's trial counsel testified that she initially asked the court to be permitted to cross-examine Ms. Waller regarding her other crimes. Ms. Waller's theft conviction was ruled admissible, but certain felony drug convictions were excluded. Trial counsel testified that as the parties were discussing the admissibility of the drug convictions, she began to think that the convictions might reflect badly on her client, who was close to Ms. Waller and had rented from her for a significant time. Accordingly, she did not make an offer of proof or vigorously pursue the admissibility of the convictions. Trial counsel testified that Ms. Waller was wearing prison clothing and was handcuffed in front of the jury, and she felt that these circumstances, along with the admissible theft conviction, adequately called Ms. Waller's credibility into doubt.

Regarding the valuation, trial counsel testified that she hired an investigator to assist her with the petitioner's case and that she discussed the issue of valuation of the ring with other attorneys in her office. She did not uncover any information showing that the ring might be worth less than $10,000. She testified that she did not object to the appraisal of the setting or Mr. Hodges's appraisal based on the Confrontation Clause or on the grounds that the appraisals required expert testimony. She objected to Ms. Peeler's testimony regarding valuation because Ms. Peeler was not an expert witness, and the court excluded Ms. Peeler's testimony. Trial counsel testified that she believed that the appraisals of the setting and the ring were admissible as business records. She did object to the admissibility of the valuation of the setting on several grounds, including that the appraisal was not properly authenticated, that it had been prepared five years prior to the theft, that the document purported to be valid only for insurance purposes, and that the State did not independently appraise the ring or call the appraiser as a witness. The trial court ruled that the setting's appraisal was admissible, and trial counsel did not raise the same arguments regarding the ring's appraisal which was introduced later in the trial. Trial counsel argued to the jury that the State had not established the current fair market value of the property beyond a reasonable doubt.

---

[2] "Facts relating to the operation of the courts, matters occurring within the immediate trial or appeal, or developments in a prior trial or prior proceedings all have been subject to judicial notice." *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009).

The post-conviction court denied relief. The court determined that trial counsel's decision to abandon her pursuit of the admissibility of Ms. Waller's prior convictions was strategic because the jury was already aware that Ms. Waller had a criminal record, that she had committed theft, and that she was incarcerated and wearing prison clothing, and because trial counsel feared introducing drug convictions would reflect badly on her client, given his close relationship with Ms. Waller. The court found that trial counsel's failure to object to the statements regarding the ring's valuation based on the Confrontation Clause was not deficient because the statements were not testimonial. The court also found that trial counsel objected to Ms. Peeler's testimony based on the fact that she had not been qualified as an expert, and her testimony was excluded. The post-conviction court further found that trial counsel's failure to object to the written appraisals because the authors had not been qualified as experts was not prejudicial because the victim also testified to the value. The court then determined that trial counsel's failure to object to the victim's testimony was not deficient because the victim's testimony regarding the value of his property was admissible. The petitioner filed a notice of appeal within thirty days of the post-conviction court's order.

## ANALYSIS

### I. Jurisdiction

The State argues that the notice of appeal is not timely in either case because a motion to reconsider does not toll the time period for filing the notice of appeal. Consequently, the State asserts that neither the coram nobis court nor the post-conviction court had jurisdiction to grant the motions to reconsider or to hold the subsequent hearings.

Generally, a judgment becomes final thirty days after its entry unless a notice of appeal or specified post-judgment motion is filed. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996); Tenn. R. App. P. 4(a)-(c). When the judgment has become final, the trial court generally loses jurisdiction to amend it. *State v. Moore*, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991). Any ruling made after the trial court has lost jurisdiction is void and is a nullity. *State v. Green,* 106 S.W.3d 646, 649 (Tenn. 2003); *State v. Hamlin*, 655 S.W.2d 200, 202 (Tenn. Crim. App. 1983) (concluding that hearing and order filed after judgments had become final was void). Although the petitioner asserts that the State waived the jurisdictional argument, "jurisdiction to modify a final judgment cannot be grounded upon waiver or agreement by the parties." *Moore,* 814 S.W.2d at 383. This court lacks jurisdiction over an appeal from a judgment in which the trial court lacked jurisdiction, and it must dismiss such an action. *Hamlin*, 655 S.W.2d at 202-03.

7

A notice of appeal must be filed within thirty days of the entry of the judgment which is appealed. Tenn. R. App. P. 4(a). Tennessee Rule of Appellate Procedure 4 lists the motions which may defer the deadline for filing a notice of appeal and extend the trial court's jurisdiction. In criminal actions, a motion under Rule 29(c) for a judgment of acquittal, a motion under Rule 32(a) for a suspended sentence, a motion under Rule 32(f) for withdrawal of a plea of guilty, a motion under Rule 33(a) for a new trial, and a motion under Rule 34 for arrest of judgment operate to extend the time for filing a notice of appeal, and the notice of appeal must be filed within thirty days of an order denying one of the motions listed above. Tenn. R. App. P. 4(c). However, in a criminal case, the notice of appeal is not jurisdictional, and it may be waived in the interest of justice. Tenn. R. App. P. 4(a).

Initially, we reiterate that a motion to reconsider is simply not authorized by the Tennessee Rules of Criminal Procedure. *State v. Turco,* 108 S.W.3d 244, 245 n.2 (Tenn. 2003); *State v. Lock*, 839 S.W.2d 436, 440 (Tenn. Crim. App. 1992); *State v. Ryan*, 756 S.W.2d 284, 285 n.2 (Tenn. Crim. App. 1988). Accordingly, the filing of such a motion does not function to toll the time for filing a notice of appeal. *Lock,* 839 S.W.2d at 440. A hearing conducted after the judgment has become final lies outside the jurisdiction of the court. *See id*. at 440.

## A. Coram Nobis

In his coram nobis action, the petitioner moved the court to reconsider the judgment on the thirtieth day after the entry of the order. The petitioner cited the Rules of Civil Procedure as governing his motion and the subsequent proceedings. Under Tennessee Rule of Civil Procedure 59.04, a motion to alter or amend a judgment must be filed within thirty days of the entry of judgment. A motion under Tennessee Rule of Civil Procedure 59.04 will "extend[] the time for taking steps in the regular appellate process" in civil actions. Tenn. R. Civ. P. 59.01; Tenn. R. App. P. 4(b) (noting that, in civil actions, the time for appeal runs from the entry of the order denying or granting a motion under Tennessee Rule of Civil Procedure 59.04). While the Rules of Civil Procedure do not authorize a motion to reconsider, the Tennessee Supreme Court has concluded that a motion which is labeled a "motion to reconsider" but is in substance a motion under Rule 59.04 functions to toll the commencement of the time for filing a notice of appeal. *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998); *see also State v. Biggs*, 769 S.W.2d 506, 509 (Tenn. Crim. App. 1988) (concluding that a motion to reconsider filed in a criminal case was in essence a request for reduction of a sentence under Tennessee Rule of Criminal Procedure 35); *State v. Chase Nathaniel Martin*, No. E2014-00738-CCA-R3-CD, 2015 WL 395664, at *5 (Tenn. Crim. App. Jan. 30, 2015), *perm. app. denied* (Tenn. Apr. 10, 2015) (concluding that motion to reconsider was in essence a request for reduction of a sentence under

Tennessee Rule of Criminal Procedure 35 but holding that the motion did not toll the commencement of time to file an appeal because it is not a motion specified in Rule 4(c)).

Thus, whether the coram nobis court had jurisdiction over any of the proceedings after filing of the order summarily dismissing the petition on June 17, 2013, depends on whether post-judgment motions in coram nobis are governed by Tennessee Rule of Appellate Procedure 4(b), applying to civil actions, or Tennessee Rule of Appellate Procedure 4(c), applying to criminal actions. The statute governing petitions for the writ of error coram nobis states that the writ is "to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith." T.C.A. § 40-26-105(a) (2010). The Tennessee Supreme Court has applied Tennessee Rule of Civil Procedure 8.03 to petitions for the writ of error coram nobis. *Sands v. State,* 903 S.W.2d 297, 299 (Tenn. 1995). We observe that this court has on numerous occasions concluded that a motion to reconsider filed in a coram nobis action did not operate to toll the time for filing a notice of appeal. *See Dolwin D. Cormia v. State*, No. E2010-02290-CCA-R3-PC, 2011 WL 5027107, at *6-7 (Tenn. Crim. App. Oct. 21, 2011) (concluding that motion filed under Tennessee Rule of Civil Procedure 59.04 did not toll the commencement of the thirty-day period because it was not listed in Tennessee Rule of Appellate Procedure 4(c)); *see also Jermaine Carlton Jordan v. State*, No. M2013-02497-CCA-R3-ECN, 2014 WL 5501574, at *1 (Tenn. Crim. App. Oct. 31, 2014) *no perm. app. filed* (noting that the motion to reconsider, which was not authorized under the Rules of Criminal Procedure, did not toll the time period for filing an appeal); *Gary S. Mayes v. State*, No. E2012-00680-CCA-R3-PC, 2013 WL 485682, at *2 (Tenn. Crim. App. Feb. 7, 2013) (concluding that motion to reconsider was not authorized in a coram nobis action). Tennessee Rule of Appellate Procedure 4 lists the motions which may extend the trial court's jurisdiction "in Civil Actions" in subsection (b) and the motions which may extend the trial court's jurisdiction "in Criminal Actions" in subsection (c). We conclude that, because a coram nobis action is a "criminal action," only the motions specified in Tennessee Rule of Appellate Procedure 4(c) operate to toll the time for filing a notice of appeal.

The petitioner's motion to reconsider, accordingly, did not extend the coram nobis court's jurisdiction. All of the coram nobis court's actions taken after the judgment of dismissal became final, which occurred thirty days after its entry, are a nullity. The last action that the coram nobis court took within its jurisdiction was its order summarily dismissing the petition for failure to include supporting affidavits. Furthermore, the petitioner's notice of appeal, filed after the coram nobis court held a hearing on the matter and entered an order denying the petition, was not filed within thirty days of the coram nobis court's judgment dismissing the petition for lack of supporting affidavits.

9

This court may waive a timely notice of appeal in the interest of justice. Tenn. R. App. P. 4(a). The judgment that would be before us for review in the event of waiver would be the coram nobis court's decision to dismiss the petition over one year after the petition was initially filed for failure to attach affidavits. This is the last judgment that the coram nobis court issued while it retained jurisdiction. Waiver of the notice requirement is not automatic, and this court bears in mind that reflexively granting waiver would render the timely notice requirement a "legal fiction." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). "In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *Rockwell*, 280 S.W.3d at 214 (quoting *State v. Markettus L. Broyld,* No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005)).

The petitioner does not ask us to waive the timely notice of appeal. We make the obvious inference that he believed that the motion to reconsider would toll the time period available for filing the notice, particularly as he cited Tennessee Rule of Civil Procedure 59.04. At oral argument, the petitioner also asserted that the State had waived jurisdiction and the notice was therefore timely. As we have noted above, however, the parties cannot waive jurisdiction. *Moore,* 814 S.W.2d at 382. Given the lack of clarity regarding the rules which govern post-judgment motions in coram nobis proceedings, we choose to waive the timely filing of the notice of appeal and consider the last judgment that, in our opinion, the coram nobis court had jurisdiction to enter.

### B. Post-Conviction

The State also asserts that the notice of appeal in the post-conviction petition was untimely and that the post-conviction court lacked jurisdiction to hold the proceedings. The petitioner filed a notice of appeal within thirty days of the summary dismissal, but he then voluntarily dismissed the appeal when the post-conviction court purported to grant the motion to reconsider. After the hearing, the petitioner appealed the denial of relief within thirty days of the order denying the petition.

When a notice of appeal is filed from the final judgment of a court in a criminal case, the jurisdiction of the Court of Criminal Appeals attaches, and the trial court loses jurisdiction. *Pendergrass,* 937 S.W.2d 837. Once the trial court has lost jurisdiction, it may not amend its prior judgment. *Id.* In general, a trial court may not hear any motions filed subsequently to the filing of a notice of appeal. *State v. Howard*, 2 S.W.3d 245, 246 n.1 (Tenn. Crim. App. 1999). A party may not withdraw a notice of appeal without prejudice in order to litigate additional issues; a party may, however, dismiss an appeal under Tennessee Rule of Appellate Procedure 15. *Tony Craig Woods v. State*, No.

10

01C01-9606-CR-00238, 1997 WL 602865, at *2 (Tenn. Crim. App. Sept. 30, 1997) (concluding that all proceedings to rehear which took place after the filing of the notice of appeal were void).

The petitioner, correctly apprehending that the post-conviction court was on the verge of losing jurisdiction, filed a notice of appeal the day before the post-conviction court's judgment became final. Accordingly, the post-conviction court's dismissal of the petition without a hearing was at that point properly before this court. However, the post-conviction court, after the petitioner filed the notice of appeal and after the judgment had otherwise become final, purported to grant the motion to reconsider and to order a hearing on the petition. The post-conviction court was without jurisdiction to do so. In reliance on the post-conviction court's purported granting of the motion to reconsider, however, the petitioner moved to voluntarily dismiss his appeal, and this court granted the motion.

The mandate accompanying the dismissal, which is included in this record, stated that the case was to "be remanded [to the post-conviction court] for further proceedings and final determination therein." This court has jurisdiction to remand a controversy for further proceedings. "A trial court reacquires jurisdiction over a case after it receives a mandate from the appellate court." *Born Again Church & Christian Outreach Ministries, Inc. v. Myler Church Bldg. Sys. of the Midsouth, Inc.*, 266 S.W.3d 421, 425-26 (Tenn. Ct. App. 2007). The case then stands in the same posture it did before the appeal except insofar as the judgment has been altered by the appellate court. *Id.* at 426. Accordingly, we conclude that the post-conviction court regained jurisdiction on this court's remand, although its order entered after the notice of appeal and prior to remand was void. *Born Again Church*, 266 S.W.3d at 425 ("Absent an application for remand, the trial court's attempt to enter further orders . . . is a nullity."). Because this court, in its mandate, ordered the post-conviction court to hold "further proceedings" and to make "a final determination," we conclude that the post-conviction court had jurisdiction to hold the post-conviction hearing from which the petitioner appeals, and we likewise have jurisdiction to consider the timely appeal of the denial of post-conviction relief.

### II. Summary Dismissal of the Petition for the Writ of Error Coram Nobis

We turn now to the coram nobis court's order summarily dismissing the petition for failure to include affidavits. Coram nobis relief is an extraordinary remedy "known more for its denial than its approval." *State v. Mixon*, 983 S.W.2d 661, 666 (Tenn. 1999). The writ "will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-

11

105(b). The petitioner must also show he was without fault in failing to present the claim at the proper time. *Id.* Generally, the decision to deny a petition for writ of error coram nobis is entrusted to the trial court's discretion. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004). Coram nobis petitions can be fact-intensive, are not easily resolved on the face of the petition, and often require a hearing. *Harris v. State (Harris I)*, 102 S.W.3d 587, 593 (Tenn. 2003). Nevertheless, the trial court is required to conduct an evidentiary hearing only when it is essential, and the court may dismiss a petition for writ of error coram nobis without a hearing. *Cole v. State*, 589 S.W.2d 941, 941-43 (Tenn. Crim. App. 1979); *see also State v. Lingerfelt*, 687 S.W.2d 294, 295 (Tenn. Crim. App. 1984).

A petition is subject to dismissal if it does not recite: (a) the grounds and the nature of the newly discovered evidence; (b) why the admissibility of the newly discovered evidence may have resulted in a different judgment if the evidence had been admitted at the previous trial; (c) that the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (d) the relief sought by the petitioner. *State v. Hart*, 911 S.W.2d 371, 374-75 (Tenn. Crim. App. 1995). A motion seeking a new trial based on newly discovered evidence "must also be supported by affidavits." *Harris v. State (Harris II)*, 301 S.W.3d 141, 152 (Tenn. 2010) (Koch and Clark, JJ., concurring). These affidavits "should be filed in support of the petition or at some point in time prior to the hearing." *Hart*, 911 S.W.2d at 375. The affidavits must be relevant, material, germane to the grounds raised in the petition, and based on personal knowledge. *Id.* "Affidavits which fail to meet these criteria will not justify the granting of an evidentiary hearing since the information contained in the affidavits, taken as true, would not entitle the petitioner to relief." *Id.* Clearly, the court in *Hart* contemplated that the trial court would have the discretion to deny an evidentiary hearing when affidavits were either missing or inadequate. *See Teague v. State*, 772 S.W.2d 915, 922 (Tenn. Crim. App. 1988) *overruled on other grounds by Mixon*, 983 S.W.2d at 670 n.13 (concluding that because no affidavits were filed with or subsequently to the petition and because the petitioner did not allege what the newly discovered evidence was or how he was without fault in failing to discover it, the petitioner failed to establish that he was entitled to an evidentiary hearing); *James Clark v. State*, No. W2014-00514-CCA-R3-ECN, 2015 WL 177076, at *3 (Tenn. Crim. App. Jan. 14, 2015) *no perm. app. filed* (concluding that the petitioner was not entitled to a hearing when he failed to obtain affidavits from witness, failed to describe how he was without fault in discovering the evidence, and when the allegations failed to show that there may have been a different judgment had the newly discovered evidence been introduced at trial).

The petitioner was given over one year to file affidavits supporting his petition based on newly discovered evidence. Despite counsel's efforts, he was unable to obtain a sworn statement in the form of an affidavit from the witness whose allegations formed

12

the basis of the dismissed petition.[3]  The Tennessee Supreme Court has observed that one reason for the procedural requirements of relief sought based on newly discovered evidence is "the great temptation to perjury."  *Ross v. State*, 170 S.W. 1026, 1028 (Tenn. 1914).  We conclude that the coram nobis court did not err in dismissing the petition when the petition lacked supporting affidavits over one year after its initial filing.

In any event, the purported evidence presented by both of the petitioner's witnesses was "merely cumulative" and served "no other purpose than to contradict or impeach" the evidence adduced during the course of the trial.  *State v. Hall*, 461 S.W.3d 469, 495 (Tenn. 2015) (quoting *Hart*, 911 S.W.2d at 375); *see State v. Vasques*, 221 S.W.3d 514, 528 (Tenn. 2007) (holding that "whether the testimony qualifies as impeachment evidence may be relevant in the determination" of whether the evidence may have led to a different result at trial "but is not controlling").  Even if Ms. Waller's testimony regarding the petitioner's residence at the time he gave her the ring were successfully impeached, such impeachment would not justify granting a petition for the writ of error coram nobis.  The "newly discovered evidence" does nothing to undermine the testimony at trial that the petitioner had access to the ring, that the ring disappeared from the safe, and that the petitioner offered the ring to Ms. Webber and later to Ms. Waller.  The petitioner did not show that the evidence "may have resulted in a different judgment, had it been presented at the trial."  T.C.A. § 40-26-105(b); *Hart*, 911 S.W.2d at 374-75; *see*, *e.g.*, *Hicks v. State*, 571 S.W.2d 849, 852 (Tenn. Crim. App. 1978) (evidence which would impeach witness who said she was working on a particular night would not entitle the appellant to a new trial).  We determine that the coram nobis court did not err in summarily dismissing the petition.

### III. Post Conviction Relief

The petitioner also appeals the denial of post-conviction relief.  A post-conviction petitioner must establish that his conviction or sentence is void or voidable due to the abridgment of any constitutional right.  T.C.A. § 40-30-103.  The petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence.  T.C.A. § 40-30-110(f); *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010).  "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence."  *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).  The findings of fact made by a post-conviction court are conclusive on appeal unless the evidence preponderates against them.  *Ward*, 315 S.W.3d at 465.  This court may not

---

[3] We note that counsel was also not able to produce the witness at the extra-jurisdictional hearing.

substitute its own inferences for those drawn by the post-conviction court, and questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). The trial court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *Id.*

Both the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution guarantee the accused the right to counsel. This right has been defined as the right to the "reasonably effective" assistance of counsel, or assistance "within the range of competence demanded of attorneys in criminal cases." *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999)). The overall standard of effectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

In order to establish that he received the ineffective assistance of counsel, the petitioner must show both that his lawyer's performance was deficient and that the deficiency resulted in prejudice. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). Deficiency can be shown if the petitioner demonstrates that his attorney's services were below an objective standard of reasonableness under prevailing professional norms. *Id.* A petitioner must demonstrate deficiency by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 687). A reviewing court indulges "a strong presumption that counsel's conduct falls with the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. There is a presumption that counsel's acts might be "sound trial strategy," and strategic decisions, when made after a thorough investigation, are "virtually unchallengeable." *Felts*, 354 S.W.3d at 277 (quoting *Strickland*, 466 U.S. at 689, 690).

To prevail on the prejudice prong, the petitioner "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (quoting *Vaughn*, 202 S.W.3d at 116). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* A claim may be denied for failure to prove either prong, and a court need not address both if the petitioner has failed to establish either deficiency or prejudice. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

14

## A. Impeachment of Ms. Waller

The petitioner contends that trial counsel erred in forgoing an offer of proof regarding Ms. Waller's excluded convictions, in failing to cite the correct Rule of Evidence regarding the admissibility of prior convictions, and in failing to include the issue in the motion for a new trial, and he contends that these errors amounted to ineffective assistance of counsel. The post-conviction court credited trial counsel's testimony that she abandoned her attempt to seek the admission of the convictions as part of trial strategy. Trial counsel testified that she anticipated the proof would show a close relationship between Ms. Waller and her client, and she worried that the jury would infer that he was likewise involved with drugs if she prevailed in her attempt to use the prior drug convictions. The evidence does not preponderate against the post-conviction court's finding, and insofar as the decision was reasonable trial strategy, it is entitled to deference. *Felts*, 354 S.W.3d at 277. Moreover, the petitioner cannot show prejudice with regard to this claim. Ms. Waller appeared before the jury in prison clothing and handcuffs, and the jury was made aware that she had committed felony theft. The slight additional impeachment value of her felony drug convictions does not create a reasonable probability that the result of the trial would have been different.

## B. Valuation Evidence

The petitioner next contends that trial counsel provided ineffective assistance in failing to exclude evidence regarding the valuation of the ring. In particular, the petitioner asserts that trial counsel should have objected to both appraisals because the authors of the documents were not qualified as experts by the trial court and because the appraisals violated the petitioner's right to confront witnesses. He also argues that trial counsel should have objected to the victim's testimony of the ring's purchase price because it did not reflect the fair market value at the time of the offense. According to the petitioner, if trial counsel had properly objected, all the evidence of valuation would have been excluded, and the State would have failed to prove the element of value beyond a reasonable doubt.

We conclude that trial counsel was not deficient in failing to object to the victim's testimony regarding value. The proper admission of the victim's testimony, in turn, leads us to conclude that the petitioner cannot establish prejudice with respect to the expert valuations. The post-conviction court correctly concluded that the business records in this case are examples of nontestimonial statements. *See State v. Cannon*, 254 S.W.3d 287, 303 (Tenn. 2008) (holding that business records and medical records are nontestimonial). The document regarding the valuation of the setting was introduced to bolster the victim's testimony that he had the setting insured for a value of $3,365.50.

15

The victim also testified that he paid around $3,600 for the setting, which he purchased in Florida, and around $16,000 for the stone, which he purchased at Hodges Jewelers in Dickson, Tennessee.

A witness may testify to the value of the witness's own property or services. Tenn. R. Evid. 701(b). The petitioner objects that the statute defines "value" as "[t]he fair market value of the property or service at the time and place of the offense" and that, if counsel had objected, the victim would not have been permitted to testify to the purchase price. *See* T.C.A. § 39-11-106(a)(36)(A)(i).

While the petitioner is correct that the jury was required to decide the fair market value of the item, the purchase price can be relevant to that determination. In fact, this court has noted that value "may not be determined solely by its worth to the owner or its original cost; but it has been held that cost, together with other proof, may afford the basis for a valid finding as to value." *State v. Campbell*, 721 S.W.2d 813, 819 (Tenn. Crim. App. 1986) (quoting 52A, C.J.S., Larceny, § 60(2)) (allowing victim's testimony valuing coats based on purchase price). The petitioner cites *State v. Hamm*, which held that "the trier of fact is to determine the fair cash market value of the stolen property at the time and place of the theft; neither the original value nor the replacement value of the stolen goods are recognized for this purpose." *State v. Hamm*, 611 S.W.2d 826, 828-29 (Tenn. 1981). *Hamm* cites to *American Jurisprudence* for the proposition that the original value is not the "true criterion" for establishing value. *Hamm*, 611 S.W.2d at 829 (citing 50 Am. Jur. 2d Larceny § 159 (1970)). That treatise, however, notes that "the purchase price paid by the owner is admissible as a factor for the jury to consider in determining market value, when it is not too remote in time and bears a reasonable relation to market value." 50 Am. Jur. 2d Larceny § 130 (2015); *see State v. Gartner*, 638 N.W.2d 849, 860 (Neb. 2002) (citing cases where jury was permitted to infer value based on purchase price and nature and condition of property).

In this case, the petitioner suggests no basis for trial counsel's objecting to the admissibility of the purchase price other than that the purchase price was not necessarily equivalent to the fair market value. While this objection may affect the weight of the testimony, the victim's testimony regarding the purchase price was nevertheless relevant and admissible because it had a tendency to make the fact of the ring's valuation at above $10,000 more probable or less probable than it would be without the evidence. *See* Tenn. R. Evid. 401. The jury was instructed to find the fair market value of the property.[4] The evidence established that the victim paid approximately $19,600 for the stone and setting together, that the setting was insured for over three thousand dollars, and that five years

---

[4] In closing argument, trial counsel referred to the instructions which would require the jury to find the fair market value.

16

had passed since the purchase. The jury was aware of the nature of the property: jewelry containing precious stones. *See Lester v. Commonwealth*, 518 S.E.2d 318, 322 (Va. Ct. App. 1999) (distinguishing jewelry from mechanical equipment which can depreciate and cease to function). The jury was shown the ring so that it could judge the condition of the property. The jury apparently drew the reasonable inference that the value of a piece of diamond jewelry, which had been purchased for around $19,600 and remained in good condition, would not have plummeted by $9,600 -- to almost half its original cost -- in a period of five years. *See Coley v. State*, 790 S.W.2d 899, 901 (Ark. 1990) (owner's testimony that car was purchased three years prior to theft for $14,000 and evidence that it was in good condition sufficiently established value above $2,500); *People v. White*, 561 N.Y.S.2d 756, 758 (N.Y. App. Div. 1990) ("Original cost may, however, provide sufficient evidence of value where the difference between the cost of the item and the statutory threshold is wide, and there is no risk of rapid depreciation.").

Because the victim's testimony was properly admitted and sufficient to support the element of value, the petitioner cannot show a reasonable probability that, had trial counsel excluded the appraisal documents, the result of the proceeding would have been different. These documents were merely corroborative of the victim's testimony regarding value. We conclude that the post-conviction court did not err in denying relief.

## CONCLUSION

Based on the foregoing analysis, we affirm the denial of post-conviction relief and the dismissal of the petition for the writ of error coram nobis.

_____
JOHN EVERETT WILLIAMS, JUDGE

17